**In re the Marriage of David O. FILKINS, petitioner, Appellant,**

v.

**Kathryn FILKINS, Respondent.**

No. C0–83–1180.

Court of Appeals of Minnesota.

May 1, 1984.

Arlo H. Vande Vegte, Long Lake, for appellant.

Toni G. Pomerene, M. Sue Wilson & Assoc., Minneapolis, for respondent.

Considered and decided by FOLEY, P.J., and WOZNIAK and SEDGWICK, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

The parties were married on September 10, 1966. On May 19, 1983, the trial court issued a judgment dissolving the marriage and dividing the parties' property. David appeals the property division. We affirm.

## FACTS

There is little dispute about the facts. David and Kathryn Filkins met at Southern Illinois University and were married within a year. David majored in communications and, upon completing his degree, received a job with an Austin, Minnesota television station. Kathryn quit school without finishing her degree and moved with her husband to Austin. They have had three children, ages 15, 12, and 6.

After several years in Austin, David took a job selling commercial time to area businesses with KMSP, a Twin Cities television station. He has been successful at his work, earning $41,000 per year. At the start of the dissolution proceeding, David was taking a $3,000 per month draw on 8% of his gross billings. Recently, because of the station's economic problems, his draw was cut to $2,000 per month against a commission of 6%. He has also received money from an aunt in Mississippi. This includes $17,000 worth of gifts while the aunt was alive and a $10,000 legacy from her estate.

Kathryn has been a traditional homemaker for most of the marriage. She has recently returned to school to finish her degree. She earns $880 per month running a day care facility out of the home and $475 per month renting the basement of the home.

The complaint of David is that he has been saddled with too much of the debt from the marriage, and too little of the marital assets is available to pay off the debt. The major marital asset is the Filkins' home which is valued at $200,000. As part of the decree, Kathryn has use of the house for the next ten years and David has a lien on one-half of the value of the house. They acquired a Baron Replica which is in the possession of David. The car is a replica of a 1932 Rolls Royce built on a GM frame. It cost over $10,000.

In apportioning property, the trial court gave David approximately $80,000 of the assets and $32,000 of the debts. Kathryn was given $72,000 of assets and $4,000 of debts. David was made responsible for the following debts: $2,999.15 owed to the IRS, $10,321.18 owed to F & M Marquette Bank for the Baron car of which he now has possession, $2,400.43 owed to the 20th Century Fox Credit Union for living expenses while married, $4,569.38 for overdrafts covered by a "worry free" checking account, $722.85 owed as one-half the negative equity in a contract for deed sold during the marriage, $9,067.31 for a home improvement loan, part of which was used for the Baron car, and $2,500 in attorney's fees. The debts charged to Kathryn include $1,433.57 and $1,750.00 for improvements on the house and $722.85 as her share of the negative equity in the contract for deed mentioned above.

## ISSUES

1. Did the trial court abuse its discretion by awarding the use of the homestead to the wife and children?
2. Did the trial court abuse its discretion in apportioning debt among the parties?

## ANALYSIS

■ When dividing property from a marriage, the trial court has broad discretion. *Schmitz v. Schmitz*, 309 N.W.2d 748 (Minn.1981). Where evidence supports the trial court's division, this court must affirm even if it would have reached a different conclusion in the first instance. *Posselt v. Posselt*, 271 Minn. 575, 136 N.W.2d 659 (1965). The trial court can be reversed only on a clear showing of abuse of discretion. *Bogen v. Bogen*, 261 N.W.2d 606 (Minn.1977).

■ 1. David believes that the trial court abused its discretion by awarding the use of the house to Kathryn because it had no valid reasons for making the award. There are three reasons for the decision: the house is well suited for her day care business, it provides stability in the children's lives, and, if sold, Kathryn would have to move, uprooting the children from their school and friends. These facts support the trial court's decision on the use of the home.

■ David alternatively asks that this court grant him interest on his portion of the equity in the home. Such a modification is unwarranted. Under the decree, Kathryn pays the mortgage and will get credit for principal reduction only upon sale of the house. Upon the sale of the house, David will receive his share of the equity. This is an equitable arrangement. The trial court is under no duty in this case to guarantee David a percentage return on his equity when Kathryn receives no such guaranteed return herself.

■ 2. As a general rule, courts have no power to apportion property in a dissolution but by statute. In Minnesota, a court in a dissolution proceeding

shall make a just and equitable division of the marital property of the parties without regard to marital misconduct, after making findings regarding the division of the property.

Minn.Stat. § 518.58 (1982). Marital property is "property, real or personal, including vested pension benefits or rights, acquired by the parties, or either of them, to a dissolution, legal separation, or annulment proceeding at any time during the existence of the marriage relation ..." Minn. Stat. § 518.54(5) (1982). Thus, the statute does not give specific authority to appor-

tion debts as property and no Minnesota case has specifically so ruled.

■ Several other states have considered debts as property apportionable in a property settlement. *Cadwell v. Cadwell*, 126 Ariz. 460, 616 P.2d 920 (Ct.App.1980); *Schmidt v. Schmidt*, 180 Conn. 184, 429 A.2d 470 (1980); *In re Marriage of Johnson*, 299 N.W.2d 466 (Iowa 1980). *Cf. N.J.W. v. W.E.W.*, 584 S.W.2d 148 (Mo.App. 1979) (debts not "property" but still apportionable). Considering the fact that credit is one of the primary ways that couples obtain their property, it seems only fair that it should be apportioned in the property settlement. As the Arizona appellate court has noted, "If the debts already owed by the [parties], as distinct from the wife's attorneys' fees, cannot be allocated between the parties then an essential item of divorce dispute remains unresolved." *Cadwell*, 126 Ariz. at 461, 616 P.2d at 921. Debts are apportionable under Minnesota's statute.

■ Attorney's fees for the dissolution are not part of the marital estate. *See Id.* They should not therefore be considered.

■ A number of the debts were made by David for his own purposes. The $10,321.15 note with F & M Marquette Bank is a loan for a car which is now in David's possession. He admits that the car secures the loan. The overdrafts on the checking account covered by the ready reserve account were on an account which was David's own account. In November of 1982, after the parties had separated, David reduced the balance to zero. The present indebtedness was used for David's own purposes. The second F & M note, for $9,037.61, was used by David, at least in part, for the Baron car. The trial court took this into consideration when assigning David responsibility for the debt.

Concerning the 20th Century Fox Credit Union debt, David testified that it was for household expenses, although the account is in his name alone. Kathryn does not know what the loan was used for.

The IRS deficiency and the negative equity in a contract for deed are properly considered marital debts. The IRS deficiency was from a joint return. The negative equity in the contract for deed was for jointly-held property and is distributed evenly between the two.

A simple glance at the balance sheet seems to indicate David was assigned an inordinate amount of debt. Closer inspection of the debts, however, shows that most of them were made by David for his own purposes. The trial court weighed the underlying reasons for the debts and carefully distributed the assets and debts in an equitable manner. Considering David's greater ability to pay and the nature of the debts, it is not inequitable to make him pay them. The trial court did not, therefore, abuse its discretion.

### DECISION

There were many valid reasons for allowing the wife and children to use the homestead. The trial court carefully considered each debt and determined that the appellant should pay debts primarily used for his benefit. The trial court did not abuse its discretion.

Affirmed.