**In re Marriage of Carole Ann HALPER, petitioner, Respondent,**

**v.**

**David William HALPER, Appellant.**

**No. C4-83-1781.**

Court of Appeals of Minnesota.

May 1, 1984.

As Modified April 30, 1984.

Thomas A. Roe, Roe & Schmidt, Ltd., Minneapolis, for petitioner-respondent.

Edward L. Winer, Dale M. Wagner, Moss & Barnett, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and PARKER and LANSING, JJ.

## OPINION

POPOVICH, Chief Judge.

This is a marital dissolution appeal involving orders for child support and visitation. The marriage of the parties was dissolved on August 9, 1983 by the Hennepin County District Court, Family Division. The dissolution order incorporated the stipulated division of property and waiver of maintenance as well as the court's determination of child support and visitation.

Appellant David Halper moved for amended findings increasing visitation and reducing child support. Respondent Carole Ann Halper then requested increased child support and reduced visitation. A hearing was held on September 9, 1983 and the trial court issued an amended order and decree on September 23, 1983. The amended order increased appellant's visitation rights and retained the original award of child support.

On appeal, appellant seeks a reduction in child support. Respondent seeks an increase in child support and a decrease in appellant's visitation rights.

Affirmed.

## FACTS

Carole Ann Brons and David Halper were married in Minneapolis on November 22, 1976. Prior to their marriage, they signed a lengthy antenuptial agreement. This was Carole Ann's first and David's second marriage.

Carole Ann gave birth to Nicole Ariel Halper, a normal, healthy child. On March 26, 1983, Carole Ann filed a petition for dissolution. The parties reached their own agreement with respect to a property division, spousal maintenance, and custody. The remaining issues of child support and visitation were submitted to the court on the written record.

David is the sales manager for the National Packaging Division of Stone Container Corporation. His current contract runs until February 1, 1985 and he receives a minimum annual salary of $80,000. This minimum salary is increased annually based upon a review by the General Manager of National. As additional compensation, David receives one-tenth of one percent of National's sales that are directly and solely attributable to his efforts. He may also receive additional compensation through a management incentive compensation plan. His fringe benefits include hospitalization insurance, a retirement or pension program and life insurance. His reasonable expenses, including all auto expenses, are paid by National. David has also been a successful investor.

David pays child support and alimony pursuant to the decree dissolving his first marriage. He is required to pay $333.33 per month and educational expenses for two children of that marriage until specified circumstances occur. The trial court found that these monthly maintenance and support obligations total $1,683.28. The trial court, however, made no finding of David's net monthly income.

Carole Ann is an attorney licensed to practice law in the State of Minnesota. When the marriage was dissolved, she was working part-time for the Robert L. Grossman law firm. Her work time was split between legal work and serving as office manager.

The trial court awarded child support of $1,300.00 per month, subject to a cost of

living adjustment in alternate years beginning May 1, 1986, and all medical and dental expenses not covered by a health insurance policy.

The evidence concerning visitation consisted of the parties' statements, a written custody evaluation by Dr. Jack V. Wallinga, and an informal note from Dr. M. Elizabeth Craig. From this evidence, the trial court determined that both parties were fit and proper to have custody of Nicole and granted David liberal visitation.

### ISSUES

1. Whether the trial court erred in setting the amount of child support?

2. Whether the trial court abused its discretion in granting liberal visitation rights to the noncustodial parent?

1. (A) *Applicability of the support guidelines.*

The Minnesota legislature made important changes in laws regulating child support during the 1983 session. One of the most important changes was the establishment of the support guidelines. Act of June 9, 1983, ch. 308, § 17, 1983 Minn.Laws 1748, 1757–58 (codified at Minn.Stat. § 518.551, subd. 5 (Supp.1983)). The guidelines set support based on the net monthly income of the obligor and the number of dependent children from the dissolved marriage.

The guidelines went into effect August 1, 1983. *Id.* § 33, at 1767. The petition for dissolution of the Halper's marriage was filed prior to that date. An order for temporary support and maintenance was also issued prior to August 1. The judgment and decree dissolving the parties' marriage and awarding child support, however, was not issued until August 9, 1983.

Appellant maintains that application of the guidelines to a case filed prior to their effective date violates Minn.Stat. § 645.21 (1982). The statute provides:

No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature.

*Id.* We disagree with appellant's position.

In *Cooper v. Watson,* 290 Minn. 362, 187 N.W.2d 689 (1971), the Minnesota Supreme Court provided definitions of a retrospective law. The court stated:

A retrospective law, in the legal sense, is one which takes away or impairs vested rights acquired under existing laws, or creates a new obligation and imposes a new duty, or attaches a new disability, *in respect of transactions or considerations already past.* It may also be defined as one which changes or injuriously affects a present right by going behind it and giving efficacy to anterior circumstances to defeat it, which they had not when the right accrued, or which relates back to and *gives to a previous transaction some different legal effect from that which it had under the law when it occurred.* Another definition of a retrospective law is *one intended to affect transactions which occurred, or rights which accrued, before it became operative, and which ascribes to them effects not inherent in their nature, in view of the law in force at the time of their occurrence.*

*Id.* at 369, 187 N.W.2d at 693 (quoting 50 Am.Jur., Statutes § 476) (emphasis original).

 Under Minn.Stat. § 518.57 (1982), the right to child support does not accrue until the court issues the dissolution decree. In relevant part, the statute reads:

Upon a decree of dissolution, legal separation or annulment, the court may make a further order which is just and proper concerning the maintenance of the minor children as is provided by section 518.17, and for the maintenance of any child of the parties as defined in section 518.54, as support money, ....

*Id.* Since the guidelines became effective prior to issuance of the dissolution decree, the trial court correctly applied them.

(B) *Support under the guidelines.*

■ The guidelines establish the amount of support based on the obligor's net monthly income and the number of dependent children from the dissolved marriage. Minn.Stat. § 518.551, subd. 5 (Supp.1983). Appellant's net income falls in the top bracket of $1001 and over. Since Nicole is the only child of the marriage, the guidelines require 25% of appellant's net income as support.[1]

The amount of appellant's net income was bitterly contested. Respondent offered calculations estimating appellant's monthly net income at $8,947.75. Appellant, on the other hand, admitted a net monthly income of $5,000.

■ Trial courts are given broad discretion regarding child support matters. The Minnesota Supreme Court has stated, however, that "[w]here the critical evidence is documentary, there is no need for us to defer to the trial court's assessment of its meaning." *Ploog v. Ogilvie*, 309 N.W.2d 49, 53 (Minn.1981) (citing *In Re Trust Known as Great Northern Iron Ore Properties*, 308 Minn. 221, 225–26, 243 N.W.2d 302, 305, *cert. denied*, 429 U.S. 1001, 97 S.Ct. 530, 50 L.Ed.2d 612 (1976).

■ We have made an independent examination of the voluminous record and find conflicting facts supporting either party's net income estimates. Our examination of the record does, however, indicate an acceptable basis for the trial court's award of support. Appellant sought a reduction of child support per month in an unspecified amount and respondent sought an increase to $2,200.00 per month. The trial court apparently adopted appellant's figure since the support awarded is approximately 25% of the $5,000 figure and said:

In view of [David's] obligations to his ex-wife and children of his prior marriage, he can reasonably be expected to contribute towards the support of the parties' minor child the sum of $1,300.00 per month.

2. Under the amended Judgment and Decree of September 9, 1983, David's visitation rights are:

a. Every other weekend from Friday at 12:00 o'clock noon until Monday at 8:00 a.m., from Tuesday at 12:00 noon until Wednesday at 8:00 a.m. during the week preceding weekend visitation, and from Thursday at 12:00 o'clock noon until 8:00 p.m. during the week following weekend visitation.

b. One full week in the spring in even numbered years and one full week in the winter during odd numbered years, those weeks to coincide with school vacations when Nicole attains school age.

c. Six weeks each summer during which period the Petitioner shall have visitation as set forth in (a) above.

In addition, Nicole shall spend the dates and holidays below with the Petitioner or Respondent as follows:

a. Petitioner's birthday and Mother's Day with Petitioner; Respondent's birthday and Father's Day with the Respondent; Nicole's birthday with the Petitioner in even-numbered years and with the Respondent in odd years,

b. Petitioner shall have the first night of Hanukkah, the first night of Rosh Hashonah and the first Passover Seder with the minor child in all odd-numbered years; Respondent shall have the first night of Hanukkah, the first night of Rosh Hashonah and the first Passover Seder with the minor child in even years. Petitioner shall have the second night of Hanukkah, the second night of Rosh Hashonah and the second Passover Seder with the minor

---

1. While Minn.Stat. § 518.17, subd. 5 (Supp. 1983) requires application of the guidelines in all cases, it also provides for departures when the court makes express findings of fact as to the reason for lower support. Where the obligor's net income substantially exceeds the $1001 floor of the top guidelines income bracket, a departure may be warranted. The cost of rearing a child does not increase proportionately to every increase in net income. In deciding whether to depart, the trial court should consider and make reference to the support factors listed in Minn.Stat. § 518.17, subd. 4 (1982).

child in all even years; and, Respondent shall have the second night of Hanukkah, the second night of Rosh Hashonah and the second Passover Seder with the minor child in all odd years. With regard to Yom Kippur, Petitioner shall be entitled to spend the night of Yom Kippur with the minor child on odd years; Respondent shall spend the day of Yom Kippur with the minor child on all odd-numbered years. On even years, Respondent shall spend the night of Yom Kippur with the minor child and Petitioner shall spend the day of Yom Kippur with the minor child.

c. The following holidays would alternate between Respondent and Petitioner:

> Memorial Day
> Fourth of July
> Labor Day
> Thanksgiving from Wednesday at 7:00 p.m. through Friday at 7:00 p.m.

In odd years, Respondent would have visitation with Nicole on the Fourth of July and Thanksgiving. In even years, Respondent would have visitation with [sic] Nicole on Memorial Day and Labor Day.

The specific date and holiday schedule supercedes [sic] the regular visitation schedule arrangement.

*Id.* at 6, 7.

Visitation by the noncustodial parent is governed by Minn.Stat. § 518.175, subd. 1 (1982). The statute provides:

> In all proceedings for dissolution or legal separation, subsequent to the commencement of the proceeding and continuing thereafter during the minority of the child, the court shall, upon the request of the noncustodial parent, *grant such rights of visitation as will enable the child and the noncustodial parent to maintain a child to parent relationship that will be in the best interests of the child.* If the court finds, after a hearing, that visitation is likely to endanger the child's physical or emotional health or impair his emotional development, the court may restrict visitation by the noncustodial parent as to time, place, duration, or supervision and may deny visitation entirely, as the circumstances warrant. The court shall consider the age of the child and the child's relationship with the noncustodial parent prior to the commencement of the proceeding. A parent's failure to pay support because of the parent's inability to do so shall not be sufficient cause for denial of visitation.

*Id.* (emphasis added.)

The best interests of the child, in turn, are defined in Minn.Stat. § 518.17, subd. 1 (1982). The relevant factors in the statute include:

> (a) The wishes of the child's parent or parents as to his custody;
>
> . . . .
>
> (c) The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;
>
> . . . .
>
> (e) The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;
>
> . . . .
>
> (g) The mental and physical health of all individuals involved;
>
> (h) The capacity and disposition of the parties to give the child love, affection, and guidance, and to continue educating and raising the child in his culture and religion or creed, if any; and

*Id.*

Dr. Jack V. Wallinga was consulted for a custody recommendation. Dr. Wallinga met with each party separately and observed the interaction of each with Nicole. Additionally, he reviewed the results of the MMPI test for both appellant and respondent.

Dr. Wallinga concluded that both parents loved their daughter and each could provide adequate parenting. He did express some concern over Nicole's cleanliness on

the day she was with David. He also noticed that Nicole was somewhat more relaxed and positively responsive in the session with Carole Ann. Nevertheless, Dr. Wallinga concluded "[i]t would be to Nicole's benefit for visitation to be shared so that each parent has maximum free time to spend with the child as their schedules allow."

Trial courts are afforded great discretion in establishing visitation rights of the noncustodial parent. Although there is some evidence that a different visitation schedule might be preferable, the record establishes no abuse of discretion.

### DECISION

The trial court's amended order of September 23, 1983 increasing appellant's visitation rights and denying each party's motion for modification of child support is affirmed. Each party shall pay their own attorneys' fees and costs.

Affirmed.