In re the Marriage of Jerry Lee **HEARD**, Petitioner, Respondent,

v.

**Judith Marie HEARD, Appellant.**

**No. C3-83-1528.**

Court of Appeals of Minnesota.

July 17, 1984.

William P. Scott, Scott & Lucking, Pipestone, for respondent.

Patrick J. Leary, Quarnstrom, Doering, Pederson, Leary & Murphy, Marshall, for appellant.

Heard, considered and decided by SEDGWICK, P.J., and PARKER and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

This appeal involves a child custody dispute.

Appellant Judith Marie Heard appeals from Amended Findings of Fact, Conclusions of Law, Order for Judgment and Order Denying her Motion for a New Trial entered in a dissolution action on August 31, 1983.

In the original Findings of Fact, Conclusions of Law and Order for Judgment entered on July 27, 1983, the trial court awarded appellant and respondent Jerry Lee Heard joint legal and divided physical custody of the parties' two sons and concluded that each party should pay their own attorney fees. In her post-judgment motion Judy Heard contested findings and conclusions on joint legal and divided physical custody, and she requested an amended conclusion ordering her husband to pay $1,500 for her attorney's fees. Her requests for amendments were denied as was her request for a new trial.

On appeal, appellant contends that:

1. The trial court abused its discretion in applying the statutory standards for joint custody;

2. The trial court erred in denying the new trial; and

3. The trial court abused its discretion in failing to grant her request for attorney fees.

Appellant requests sole custody of the children, with liberal visitation, and further requests that if she is awarded custody that this court should order the respondent to pay child support. (The trial court con-

cluded that since the parents would have physical custody an equal amount of time, no child support would be awarded unless future circumstances required it.)

We affirm in part, and reverse and remand on issues of child custody and child support.

## FACTS

Jerry and Judith Heard were married on October 8, 1965. Two children were born of this marriage; Troy was born July 10, 1973, and Travis was born August 13, 1975.

In February 1982, the parties separated from each other and Jerry allowed Judy to occupy the home and become the primary custodial parent. The parties agreed on a visitation schedule.

On February 7, 1982, respondent filed for dissolution of the marriage and requested permanent custody of the minor children. Appellant filed an answer and counter-petition, asking for sole temporary and permanent custody of the minor children, subject to reasonable visitation as well as legal fees, maintenance and support.

On April 28, 1982, the parties went to court, mainly because of a disagreement over the church attendance of the children. The trial court granted temporary custody to appellant subject to reasonable visitation and ordered respondent to pay housing expenses, educational expenses of the boys, and temporary maintenance. The court ordered visitation on alternate Sundays and also concluded that attendance at church should be at the sole discretion of the parent in charge of the children on a given Sunday.

The parties returned to court again on December 23, 1982 on motion and affidavit of the appellant for a restraining order against the respondent. In the affidavit, appellant alleged that the respondent brought the boys back from visitation and the two began discussing Thanksgiving visitation. She states that respondent then began an angry confrontation with her; engaged in name-calling and repeated vulgar statements to and about her in the presence of the children. Further, she alleged that respondent has engaged in other similar incidents and she is fearful when he exhibits extreme rage. At the restraining order hearing, Mr. Heard was not permitted to give oral testimony. A letter written by his attorney in response to the restraining order motion was read into the record, however. The letter stated that Jerry admitted to blowing up and was willing to sign a stipulation to stay away from the home. According to Jerry, he was upset because Judy had given some of his shotgun shells to her boyfriend's son and children had already gone to bed at the time of the incident. The trial court issued an order restraining the respondent from annoying or abusing appellant or the children and from entering the house unless invited.

The trial on child custody occurred on April 27, 1983. Both parties reaffirmed that they wanted sole custody. Overall, the testimony shows that both parties love and sincerely care about the children; can adequately discipline the children, and both take parenting seriously and can arrange their jobs in a flexible manner or arrange for babysitters. Judith testified that she has been the primary caretaker of the children since birth, though Jerry, testifying specifically about when the children were young, stated that Judy stayed home with both kids until they were one and that after that they shared child care to some extent to accommodate work shifts.

The testimony shows, however, that the parties do have trouble communicating with one another. Judith, referring to Jerry, states "he has made any communication with him extremely difficult." And, Jerry, addressing the breakdown of the marriage relationship states, "I guess you could call it a complete lack of communication. We were not able to talk to work out any kinds of problems whatsoever." This communication problem has come up in relation to the children. For instance, Jerry testified that at times he has been prevented from freely communicating with the kids by

phone. Jerry Heard testified that he attempted to discuss the telephone problem with Mrs. Heard, and that on one occasion he got very abusive. Judith testified that generally the boys can call their father anytime and he can call them.

The trial judge interviewed both children on the question of custody, but they expressed no preference.

A Home Study was conducted by the Pipestone Family Service Center. A defect of this study was that the social worker did not talk to the children nor personally observe them with their father. Among the salient findings of the study are:

1. Judy describes Jerry as impulsive and he does not deny this. In his opinion a "good spouse" should live with and accept the decisions made by head of the household. Judy has been unable to be totally submissive and on occasion, when challenged, Jerry has responded by either verbal or physical abuse.

2. Judy is capable of behaving hysterically, however, this is not intended to be misconstrued to mean that she is mentally or emotionally unstable ... Dr. Talley states that in his opinion neither Judy or Jerry are mentally ill, rather reflect a sick marriage.

3. Despite the adversary nature of the divorced parents relationship, alternative weekend visitation has worked out well.

4. Judy and Jerry love the boys and are capable of caring for them.

5. It was suggested that emotionally Travis probably could not handle being separated from his mother at this time.

6. Joint legal custody is most agreeable to Jerry.

7. Judy does not believe that joint custody will work for she and Jerry and fears that she cannot count on Jerry to respect her rights.

The Home Study recommended continuation of single parent custody to Judy, saying the success of that arrangement could not be disputed.

On July 31, 1983, the trial judge ordered entry of judgment awarding joint legal and divided physical custody to the parties. Physical custody is to rotate on a yearly basis.[1] Change of custody from the mother to the father was scheduled to occur on September 1, 1983.

Appellant's new trial motion was based on a claim of newly discovered evidence, testimony about an altercation between the parties three months after trial. Judy Heard obtained relief in a domestic abuse action in July 1983, but Jerry Heard claimed he was slapped in the incident.

The relevant findings of fact stated in the order of August 31, 1983 are as follows:

That both parties are fit and proper persons to have custody of the minor children herein; that both parties are in good physical and mental health;

That the present best interests of the children will best be served by the parties having joint legal custody of the children;

That it is in the best interests of the children that their physical custody and residence be divided equally between the parties, subject to the right of reasonable visitation on the part of the non-custodial parent;

That at the request of the parties, the Court interviewed the children and the children expressed no preference as to either parent as to custody;

These additional observations of fact were stated in a memorandum of the trial court attached to its order:

The parties are of the Reformed faith and are in agreement that the children shall attend the Edgerton Christian School. The children are doing well in school. The children get along well with both parents. The parties have undergone marital counseling without avail. Both parties have numerous relatives in

---

1. Joint physical custody is a structuring of physical care and residence between parents and includes the division of custody here. Minn. Stat. § 518.003(3)(d) (1982).

the area. It is anticipated that neither party will have trouble obtaining suitable baby-sitters to look after the children until the custodial parent gets home from work.

Both parties love the children and they are equally concerned about their well-being. Since both have worked during most of their marriage both have had to take an active part in raising them—cooking, doing household chores and otherwise caring for them. Both are equally capable of providing the children with proper parental care and discipline. The best interests of the children will be served by an equal division of physical custody between the parties and by their continuing in the security of their home, at least until it is sold.

During this action the Respondent has had custody of the children, subject to reasonable visitation on the part of the Petitioner. A thorough Home Study was prepared by the Pipestone County Welfare Department. The study recommended that custody continue with the Respondent "as its success cannot be argued." However the report stated "I have not talked to the children, nor personally observed them with their father, and have nothing significant to report about observing them with their mother." In making the custody decision, the Court, although noting the conclusions of the Home Study, did not rely solely thereon but also considered the testimony of the parties and other witnesses having knowledge of the children and the parents.

## ISSUES

1. Did the trial court clearly err in its findings of fact on child custody?

2. Did the trial court err in denying a new trial based on evidence that was not available at the time of trial that could have an effect on the custody issue?

3. Did the trial court abuse its discretion in failing to award attorney's fees to the appellant?

## ANALYSIS

■ A determination of child custody must be based on the best interests of the child. Minn.Stat. § 518.17(3) (1982). In examining the interests of a child the court must consider factors specified in Minn. Stat. § 518.17(1) (1982), and its findings should reflect that this has happened. *Rosenfeld v. Rosenfeld*, 311 Minn. 76, 249 N.W.2d 168 (Minn.1976).

When joint custody is contemplated additional factors specified in Minn.Stat. § 518.-17(2) (1982) must be considered. These factors deal with the ability of parents to relate cooperatively in parenting decisions and bear mostly on the award of joint legal custody; joint legal custody is defined as the equal participation of parents in decisions on the upbringing of a child. Minn. Stat. § 518.003(3)(b) (1982).

A finding that an award serves the child's best interests will not be disturbed unless clearly erroneous. Rule 52.01, Minn.R.Civ.P. This regard for court findings explains commonplace observations on the broad discretion of the trial court in custody matters.

1.

■ Evidence in the case fails to support the finding that joint legal custody was in the best interests of the children. The court did not make specific findings on any of the § 518.17(2) factors, possibly because the parties were primarily litigating on the basis of one-parent custody. The findings of the court only state that the parents are equally qualified to raise the children, not that they are qualified to raise the children jointly.

Evidence relevant to "the ability of the parents to cooperate in the rearing of their children" contradicts the award of joint legal custody. The parties were able to establish temporary visitation and to choose a school for the children. However, they have already depended on the court on three occasions other than the trial itself to deal with their conflicts. Much of the testimony revealed two people who were unable to communicate and whose negotiations

even on such matters as telephone calls by the children sometimes resulted in abusive behavior.

The statute implies that an award of joint legal custody serves children when their separated parents can cooperatively deal with parenting decisions. It also implies that the award is destructive when the facts show a hazard joint legal custody will create occasions for quarreling of the parents and stress for the children. Awards which are inappropriate for the children are not more attractive because they compromise the dispute of the parents.

### 2.

Likewise, it was clearly erroneous to find that joint physical custody, here in the form of annual rotation of custody, would serve the best interests of the children. The trial court found that the children got along well with each parent, and that the parties had equal parenting skills. Rotation of custody is not unique in protecting the contact of the children with each parent. It may be beneficial to permit the children to remain in the family home, but the judgment says the home is to be sold "as promptly as may be."

Evaluation of divided custody is particularly affected by the statutory demand to consider "the desirability of maintaining continuity." Minn.Stat. § 518.17(1)(e) (1982). Minn.Stat. § 518.18 (1982). 1978 amendments that formed the present content of § 518.18 are recognized as a statutory scheme that "is indicative of a legislative intent to impart a measure of stability to custody determinations in most circumstances." *State on Behalf of Gunderson v. Preuss*, 336 N.W.2d 546, 548 (Minn.1983). Annual rotation of custody is no different than frequent modifications of an award. Absent extraordinary circumstances, not evident here, the award does not serve the interests of children. The arrangement is subject to this observation of the Nebraska Supreme Court, regarding modifications:

> We do not believe it is in the best interests of a child to unnecessarily change custody and bandy the child back and forth between parents. Stability is desirable.

*Scripter v. Scripter*, 190 Neb. 317, 208 N.W.2d 85, 86 (1973).

### 3.

Appellant next submits that the trial court erred in denying the request for a new trial under Rule 59.01(4), Minn.R. Civ.P. Because the child custody award is reversed, we need not address the merits of the new trial motion. On remand the trial court has responsibility to learn how the case is affected by events since trial and the parties must be free to offer additional evidence.

We have carefully considered whether to order entry of an alternative custody award. That choice is abandoned due to the absence of any evidence of record on events after the time of trial, including evidence on circumstances surrounding a change of custody already effected by the trial court on September 1, 1983.

Anticipating further trial court proceedings, the prospect for delays and undue expense of the parties is troubling. Trial court action on the custody issue must be expedited. The case should be given scheduling priority.

### 4.

Appellant submits that the trial court abused its discretion in denying her the $3,800 attorney fees she had incurred at the time of trial. (Her Exhibit #2 states that she had already paid $2,000 in attorney fees).

A determination as to the amount of attorney fees to be awarded rests largely in the discretion of the trial court and normally will not be disturbed unless there is a clear abuse of discretion. *Borchert v. Borchert*, 279 Minn. 16, 154 N.W.2d 902 (Minn.1967). The Minnesota Supreme Court also stated in the *Borchert* case that "courts should follow a conservative policy in awarding attorney's fees." *Id.* at 21,

154 N.W.2d 902. Minn.Stat. § 518.14 states that the court, after considering the financial resources of both parties, *may* "require one party to pay a reasonable amount necessary to enable the other spouse ... to contest the proceeding ..."

Here, there was no clear abuse of discretion. The income of the respondent is greater than that of the appellant; his net income for 1982 was $14,898, but for earlier years it was much higher. Her net monthly income is approximately $725, and she estimates her monthly expenses at $1,700 when the children are with her. The trial court also found, however, that she has checking and savings accounts amounting to $3,700. Once the house is sold, she will get a $3,000 property settlement; $10,-000 that she originally put into the house out of an advance on her inheritance; and then an equal division of the remaining proceeds (once the $48,000 mortgage on a $110,000 house is subtracted). Even though respondent was awarded the income producing assets of the parties (namely, the trucking business), this is how he makes his livelihood and its net worth is only about $15,000. Pursuant to court order he has paid bills totaling $29,200 since the separation.

### DECISION

It was reversible error to award joint legal custody and divided physical custody of the children. We reverse the award and remand the case for further proceedings on that issue consistent with this opinion.

The trial court decision denying an award of attorney fees was not erroneous and is affirmed.

The amended judgment is further remanded to the trial court for a determination of child support obligations under Minn.Stat. § 518.17 and § 518.54 to § 518.-57 (1982 and Supp.1983).

Affirmed in part, and reversed and remanded in part.