In re the Marriage of: David L.
JUSTIS, Petitioner, Appellant,
v.
Joyce Ann JUSTIS, Respondent.

No. C1–85–1371.

Court of Appeals of Minnesota.

March 25, 1986.

Review Denied May 29, 1986.

Paul W. Chamberlain, Wayzata, for appellant.

Morry N. Rothstein, Minneapolis, for respondent.

Heard, considered and decided by FORSBERG, P.J., and LANSING and RANDALL, JJ.

## OPINION

FORSBERG, Judge.

David Justis appeals from the judgment and decree and from the trial court's denial of his motion for amended findings or a new trial, the trial court's decision on division of marital property, maintenance, child support, custody, and attorney's fees. We affirm.

## FACTS

David and Joyce Ann Justis were married May 14, 1970. David, appellant in this action, began medical school shortly before the parties were married. Respondent, Joyce, supported David and paid part of his medical school tuition. During appellant's final year of medical school, 1973, the parties' first child, Natasha, was born. Respondent took a six-week maternity leave from her job.

After appellant completed medical school, respondent continued working as an operating room nurse. She accumulated additional college credits, through her employment at a college, which enabled her to obtain a teaching certificate. She has never worked as a teacher. In 1978, following the birth of Nicole, the parties' second child, respondent quit working and has not worked since then. Neither her nursing license nor her teaching certificate are current. The parties have had three more children, twins born in 1980, and a daughter born in 1982.

Appellant is employed by Emergency Physicians Professional Association (EPPA). He is also a shareholder in EPPA. His employment contract guarantees him a minimum annual salary of $72,-301, based on a forty-hour work week. He receives substantial overtime income, for time worked in excess of forty hours, and bonuses from EPPA. He also earns approximately $1,000 per year teaching at a local college. Based on tax returns, the court found appellant's gross income for the four years preceding the dissolution to be:

| | |
|---|---|
| 1981 | $72,285 |
| 1982 | $80,245 |
| 1983 | $89,039 |
| 1984 | $80,273 |

Appellant's employment benefits include a pension plan and a profit sharing plan, the profit sharing plan is collectible at retirement. The present value of his pension plan was found by the trial court to be $70,153.02.

In October, 1983, appellant borrowed $30,000 from his profit sharing plan to consolidate loans on the parties' two cars and a boat. Appellant is repaying the loan at 14½% interest, the monthly payments are approximately $700. The trial court added the $30,000 loan to the present value of the profit sharing plan and found the total value of the plan to be $107,468.58.

A temporary order issued by the trial court on April 10, 1984, authorized appellant to sell the boat and apply the proceeds from the sale to reduce the encumbrance on the boat. Approximately $9,000 of the loan from the profit sharing account was attributable to the boat. Appellant sold the boat in January, 1985, for $12,325. He deposited $9,700 of the proceeds in a money market account and spent the remainder on living expenses and reduction of some marital debts. The trial court found this use of the boat sale proceeds to be in contravention of the order. Consequently, it ordered appellant to pay respondent's attorney's fees with the money market funds.

A few weeks prior to filing for divorce, appellant withdrew $14,612.40 from a trust account set up, under the Uniform Gift to Minors Act, for the parties' daughter, Nicole.

The trial court also found that appellant diverted the parties' 1983 tax refund of $707 to a post office box and cashed it without respondent's knowledge or consent.

The court ordered sole legal custody of the parties' five children to respondent. The court found appellant's net monthly income, based on his contract pay plus his overtime pay, to be approximately $4,500 and ordered support in accordance with the child support guidelines. The court's findings acknowledged that fluctuations in appellant's income would sometimes cause the child support amount, $1,935, to exceed the guidelines but found the occasional upward deviation appropriate given the ages of the children, the children's needs, the disparate incomes of appellant and respondent, and the standard of living the children would have enjoyed had the marriage not been dissolved. The court assigned the profit sharing debt entirely to respondent.

The trial court divided the marital assets and debts as follows:

| Appellant | | Respondent | |
|---|---|---|---|
| household goods | $10,000 | home equity | $ 24,087 |
| Oldsmobile | 6,000 | household goods | 7,000 |
| EPPA stock | 6,499 | Chevrolet Suburban | 9,350 |
| pension plan | 35,067 | pension plan | 35,067 |
| profit sharing plan | 57,468 | profit sharing plan | 50,000 |
| IRA, stock, bank acct. | 559 | IRA, stock, bond | 6,012 |
| note to repay profit sharing plan | (30,000) | | |
| total | $85,593 | total | $131,516 |

## ISSUES

1. Did the trial court err in its division of marital property?

2. Did the trial court err in refusing to order joint legal custody?

3. Did the trial court err in its award of child support?

4. Did the trial court err in awarding respondent $750 per month maintenance for a period of five years?

5. Was the trial court biased against appellant, entitling him to a new trial?

6. Did the trial court err in ordering appellant to pay respondent's attorney's fees?

## ANALYSIS

### I.

*Property Settlement*

The trial court has broad discretion in property divisions and the court's decision will not be reversed absent a clear abuse of discretion. *Bogen v. Bogen,* 261 N.W.2d 606, 609 (Minn.1977).

Minn.Stat. § 518.58 (1984) governs the trial court's division of marital property. The court is required to make

a just and equitable division of the marital property of the parties without regard to marital misconduct, after making findings regarding the division of property.

*Id.* In arriving at a just and equitable division, the court is to take into consideration

the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, needs, opportunity for future acquisition of capital assets, and the income of each party.

*Id.*

Appellant argues the court erred in awarding the respondent $131,516 in marital assets while awarding him $115,593 in assets and apportioning, in addition, the entire $30,000 marital debt to him.

In dividing marital property the trial court is to make a just and equitable property division. Minn.Stat. § 518.58. However, the property division need not be mathematically equal to be just and equitable. *Johns v. Johns,* 354 N.W.2d 564, 566 (Minn.Ct.App.1984).

While the court did not make an express finding that it was awarding a disproportionate share of the marital property to respondent, we find, in reviewing the judgment and decree, that the court made the findings required by Minn.Stat. § 518.58 as well as findings that justify the disproportionate division. The findings indicate that respondent's vocational skills are outmoded, her licenses are not up to date; she received the homestead which is in need of substantial repair; she has been out of the work force for many years; appellant is employed in a high-paying profession; appellant is in a better position to acquire future capital assets; respondent has no income except child support and maintenance; respondent is the custodian of five young children, she is unable to work for the immediate future; and respondent received almost no liquid assets in the property division.

Taking these findings into consideration, we hold the trial court did not abuse its discretion in awarding respondent a disproportionate share of the marital estate. The

evidence supports the trial court's determination, thus we must affirm even if we would have reached a different result originally. *Posselt v. Posselt,* 271 Minn. 575, 576, 136 N.W.2d 659, 660–61 (1965). Moreover, the absence of an express finding that it was awarding respondent a larger share of marital assets is not a fatal defect. *See Giencke v. Haglund,* 364 N.W.2d 433, 435 (Minn.Ct.App.1985) (modification of child support without express finding that changes made prior order unfair).

Appellant argues that the court erred in valuing his profit sharing plan by adding the loan amount to the present value, which reflects a deduction for the loan amount.

The loan taken from appellant's profit sharing plan is secured by a legally enforceable note, repayable at 14½% interest over a three year period. The trial court found that the note was, in effect, an asset of the profit sharing account and, as such, increased the profit sharing account's value. The present value of appellant's profit sharing plan consists of both the $77,468 equity and the $30,000 debt. We cannot say that the court abused its discretion in valuing the plan in this manner.

■ Appellant argues that the trial court abused its discretion in not assigning the $30,000 marital debt to both parties. Debt is apportionable as part of the marital property settlement. *Filkins v. Filkins,* 347 N.W.2d 526, 529 (Minn.Ct.App.1984). However, *Filkins* does not require the trial court to apportion marital debts. The division of marital debts is treated in the same manner as division of assets. *Dahlberg v. Dahlberg,* 358 N.W.2d 76, 80 (Minn.Ct.App. 1984).

Here the respondent's only income consists of child support and maintenance paid by appellant. Apportioning part of the debt to her would severely limit the minimal financial resources needed to support herself and the parties' five children. "[A] party to a dissolution may be held liable for marital debts even though the other party receives the benefit of payment." *Dahlberg v. Dahlberg,* 358 N.W.2d at 80. The

trial court did not err in considering the debt along with the assets in the property division and apportioning the debt to appellant.

■ Appellant argues that the trial court erred in not awarding him a lien on the marital homestead. The award of the homestead equity was part of the whole property settlement, which we hold is just and equitable. The court did not abuse its discretion in awarding the homestead to respondent free and clear of appellant's claims.

■ The trial court ordered appellant to maintain existing life insurance of $610,000 for the benefit of the parties' children. *See* Minn.Stat. § 518.64, subd. 4 (1984). We hold the court did not abuse its discretion in ordering appellant to maintain existing life insurance or its equivalent.

■ Finally, appellant argues the court's findings that he "secreted and disposed of [funds from Nicole's trust account] as he saw fit" are unjustified since appellant spent the money for marital debts and living expenses. The finding is supported by the evidence, thus is not clearly erroneous. The findings of fact do not indicate whether the trial court took the trust account, the boat sale proceeds, or the tax refund into account when it divided the marital estate. However, it was within the court's discretion to do so, since these were all arguably marital funds. *Swanstrom v. Swanstrom,* 359 N.W.2d 634, 638 (Minn.Ct. App.1984).

## II.

### Joint Custody

■ Appellant claims the court erred in denying his request for joint legal custody of the parties' children. He agrees that physical custody in respondent will serve the best interests of the children.

"A determination of child custody must be based on the best interests of the child." *Heard v. Heard,* 353 N.W.2d 157, 161 (Minn.Ct.App.1984). When joint custody is sought, the court must consider, in addition

to the factors of Minn.Stat. § 518.17(1) (1984), the factors specified in Minn.Stat. § 518.17(2) (1984):

> These factors deal with the ability of parents to relate cooperatively in parenting decisions and bear mostly on the award of joint legal custody; joint legal custody is defined as the equal participation of parents in decisions on the upbringing of a child.

*Heard,* 353 N.W.2d at 161 (citation omitted). A finding that an award serves the child's best interests will not be disturbed unless clearly erroneous. *Id.*

Evidence on each of the factors was presented to the trial court. The evidence supports the trial court's conclusion that sole legal and physical custody rest with respondent.

## III.

### *Child Support*

Appellant objects to the trial court's consideration of his overtime income in calculating child support. He claims that the court may take only his EPPA contract guaranteed salary into consideration. The trial court found appellant earned substantial overtime income from EPPA in the three years immediately preceding the dissolution.

■ It is well settled law that the trial court has broad discretion with respect to the support of children. *Rutten v. Rutten,* 347 N.W.2d 47, 50 (Minn.1984). We will not reverse a trial court's decision unless that decision is clearly erroneous. *Id.* at 51. If the determination has a reasonable and acceptable basis in fact, it must be affirmed. *DuBois v. DuBois,* 335 N.W.2d 503, 507 (Minn.1983). Determination of net income is a question of fact. *Letourneau v. Letourneau,* 350 N.W.2d 476, 479 (Minn. Ct.App.1984). However,

> where the critical evidence is documentary, there is no need for us to defer to the trial court's assessment of its meaning.

*Halper v. Halper,* 348 N.W.2d 360, 363 (Minn.Ct.App.1984) (quoting *Ploog v. Ogilvie,* 309 N.W.2d 49, 53 (Minn.1981)).

Appellant argues that the trial court failed to make a specific finding on his net income as required by *Otte v. Otte,* 368 N.W.2d 293, 296 (Minn.Ct.App.1985). *Otte* affirms our holding in *Knott v. Knott,* 358 N.W.2d 493, 496 (Minn.Ct.App.1984) which requires the trial court to make a reasonable estimate of net monthly income before applying the guidelines.

■ The court determined appellant's net income from prior years' tax returns and pay stubs. It also reviewed appellant's employment contract. Based on this evidence and on oral testimony the court found appellant's net income "approximates 4,500 per month." The court also found:

> The amount of child support the Petitioner will be obligated to pay, since it is based on variable amounts of net income, may exceed the statutory guidelines. This departure is appropriate when consideration is given to:
>
> a.) the age of the children and their physical, educational and legitimate extracurricular needs; and
>
> b.) the disparity between the financial resources and needs of the custodial and noncustodial parent; and
>
> c.) the standard of living the children would have enjoyed had this marriage not been dissolved.

These findings satisfy the requirements of § 518.551, subd. 5(e) (1984) for deviation from the guidelines. We conclude, after reviewing the evidence, that the trial court's determination of net income has a reasonable basis in fact. The court took appropriate notice of appellant's variable income, which will in some months cause support to exceed the guidelines, and the court made the appropriate findings to justify the occasional deviation.

Moreover, appellant's tax returns and pay stubs show his overtime income to be a regular and substantial portion of his annual salary. In 1983 overtime income constituted nearly $17,000 of his gross annual income. Contrary to appellant's argument that the court is forcing him to work overtime to meet his monthly living expenses, the evidence supports the trial court's conclusion that overtime has been a regular,

steady source of income for the past several years. Appellant argues that his opportunity to work overtime in the future may decrease. Child support is based on current net income. Minn.Stat. § 518.551, subd. 5 (1984); *Kramer v. Kramer*, 372 N.W.2d 364, 368 (Minn.Ct.App.1985). The trial court cannot speculate on future income in setting child support.

Appellant argues the court erred in not making findings on his ability to pay child support. The child support guidelines implicitly take into consideration the obligor's ability to pay. Since we affirm the trial court's findings of net income, we cannot find the court abused its discretion in applying the guidelines to appellant's net income to determine his child support obligation. *See Halper v. Halper*, 348 N.W.2d 360, 363, n. 1 (Minn.Ct.App.1984).

■ Appellant also claims the court erred in not reducing his net income by $700, the approximate amount of the monthly payment on the profit sharing loan. This debt was apportioned to appellant as part of the property settlement. Shifting the debt to reduce appellant's net income would defeat the property settlement and visit the effects of the debt on the parties' children by reducing the amount appellant is legally obligated to contribute to their support. This court has held that "[a]dverse financial consequences of marital dissolutions should be minimized for minor children to the greatest extent possible." *Helland v. Helland*, 354 N.W.2d 591, 594 (Minn.Ct.App.1984). The trial court acted within its discretion in not reducing appellant's net income by the amount of the loan payments.

### IV.

*Maintenance*

Appellant argues that the trial court did not consider his ability to pay when it ordered him to pay respondent $750 per month maintenance for five years. Our standard of review for maintenance awards is to determine whether the trial court abused its discretion in light of the statutory guidelines contained in Minn.Stat.

§ 518.552. *Riley v. Riley*, 369 N.W.2d 40, 44 (Minn.Ct.App.1985).

■ Spousal maintenance is properly awarded where the spouse seeking maintenance (1) lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs, and (2) is unable to support herself through appropriate employment or is the custodian of young children and circumstances make it appropriate that she not be required to seek employment. Minn.Stat. § 518.552, subd. 1(a) and (b) (1984).

■ The factors to be considered in awarding maintenance are listed in Minn. Stat. § 518.552, subd. 2, and include financial resources of the spouse seeking maintenance and the ability of the person from whom maintenance is sought to pay. Findings are not required on each factor considered.

Minn.Stat. § 518.552, subd. 2(g) (Supp. 1985) requires the court to consider the "ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance."

The trial court found respondent's reasonable monthly living expenses to be $3,200. The court found respondent lacked sufficient property, including marital property apportioned to her, to meet her reasonable needs. Her sole source of income is the $2,689 she receives as maintenance and child support, an amount insufficient to provide for her reasonable needs. The court also found respondent to be the custodian of young children whose circumstances make it appropriate that she not be required at this time to seek full-time employment outside the home.

Appellant's monthly expenses were entered into evidence, but the trial court did not make a specific finding on his ability to pay. The documentary evidence showed appellant's monthly expenses to be approximately $1,954. Added to his maintenance and support obligations, which total $2,689, his monthly expenses total approximately $4,643. It is evident, under the circum-

stances, that appellant's income is insufficient to meet the total needs of respondent, the children and himself; however, "[e]ach case must be determined on its own facts and no single statutory factor is dispositive." *Riley*, 369 N.W.2d at 45.

 There is little doubt under findings made by the court that respondent demonstrated need for maintenance. She was awarded no significant *liquid* marital assets. She received household goods, home equity, interest in appellant's pension and profit-sharing plan, which will not become payable until retirement, her IRA, $3,117 in stocks and a $1,500 savings bond. The court's finding that she not be required to work is uncontested by appellant. We hold the trial court did not abuse its discretion in setting maintenance. Faced with a difficult situation, the court evaluated the evidence and arrived at a proper conclusion.

## V.

*Bias*

 Appellant claims the trial court demonstrated bias, improperly considering marital misconduct in setting child support, contrary to Minn.Stat. § 518.17, subd. 4 and § 518.552, subd. 2. The findings that appellant claims reflect the court's bias deal with appellant's spending the boat sale proceeds in violation of a court order, his cashing and spending a marital tax refund without respondent's knowledge or consent, and his "surreptitious squandering" of $14,612.40 from Nicole's trust account following the parties' separation. Each of these factual findings are supported by the evidence.

The trial court's statements on the record are relevant to the property settlement, and do not reflect bias against appellant.

## VI.

*Attorney's Fees*

 Appellant argues the attorney's fees are excessively given (1) the simple nature of this case and (2) the cross-examination of appellant by respondent's attorney. He claims the cross-examination brought up, inappropriately, examples of marital misconduct and warrants a reduced fee award.

Minn.Stat. § 518.14 authorizes awards of attorney's fees based on the spouse's need for financial assistance "to carry on or to contest the [dissolution] proceeding." The trial court has broad discretion to award attorney's fees and the award will not be disturbed absent a clear abuse of discretion. *Solon v. Solon*, 255 N.W.2d 395, 397 (Minn.1977).

The court ordered appellant to pay respondent's attorney's fees from the money market account set up by appellant from the boat sale proceeds. The court had previously ordered the proceeds applied to reduce the lien on the boat. When the court discovered appellant had not done so, it entered its order. "The court may authorize the collection of money awarded by execution, or out of property sequestered, or in any other manner within the power of the court." Minn.Stat. § 518.14. Appellant does not claim the court acted outside its powers.

Appellant's claim that this was a simple divorce is unsupported by the record and by the number of complex issues he raises on appeal.

## DECISION

The trial court did not abuse its discretion in the division of marital property, the determination of custody, and the orders for child support and maintenance. The trial court was not biased against appellant. The trial court did not abuse its discretion in ordering appellant to pay respondent's attorney's fees where respondent needed financial assistance to protect her rights in the dissolution.

Affirmed.

RANDALL, Judge, dissenting

I respectfully dissent from the majority on the questions of property division, child support, and maintenance. I would remand on these issues for a more equitable property division, a recalculation of appellant's net income and corresponding recal-

culation of child support, and a redetermination of appellant's ability to pay maintenance.

Although it is true that the trial court has broad discretion in property divisions, each case must be considered on its own facts. *Krohn v. Krohn*, 284 Minn. 95, 169 N.W.2d 389 (1969). Here the court made key monetary errors that cannot be overlooked.

The first error is the court's valuation of appellant's profit-sharing plan. While I acknowledge that the trial court apportioned slightly less than half of the value it assigned to the profit-sharing plan to respondent, the value assigned by the trial court to the profit-sharing plan is not supported by the evidence. Appellant entered into evidence the plan-holder's statement of the present value of the plan, $77,468.58. The court added to that present value the amount of a profit-sharing loan, $30,000, that appellant had previously taken out against the plan and was obligated to repay. The court divided this inflated total ($107,468.58) between the parties, but did not apportion any part of the $30,000 debt to respondent. Yet, the plan can only be worth $107,000 if one of the parties repays the $30,000 loan.

The trial court's apportionment of property and division of debt results in respondent's receiving an even greater share of the marital property than the court's figures indicate. The trial court compounded the erroneous division by failing to take into account uncontradicted testimony that the benefits from the $30,000 loan were shared equally between appellant and respondent. Respondent received $15,000 of the loan proceeds toward the purchase of her new Suburban and appellant applied approximately $6,000 toward his car and $9,000 toward his boat. By failing to apportion to respondent any share of the $30,000 loan needed to get the plan up to the court-assigned present value of $107,000, and by giving appellant no credit for the $15,000 from the loan which inured directly to respondent's benefit, the trial court compounded a harsh result.

When appellant sold his boat, the court originally ordered the proceeds from the sale, $12,325, to be applied to reduce the encumbrance on the boat, a debt assigned to appellant. The court then changed its temporary order in the final decree and ordered appellant to pay approximately $10,000 of the boat sale proceeds to respondent's attorney for his fee, yet left the encumbrance on the boat solely appellant's responsibility.

Although the law does not require an exactly equal division of property between spouses, it does require fairness. Minn. Stat. § 518.58 (1984); *Johns v. Johns*, 354 N.W.2d 564 (Minn.Ct.App.1984). The disproportionate property division must be closely scrutinized because in *each* of several decisions made by the trial court, the court found against appellant.

Another monetary error made by the trial court was in computing appellant's net income. While the court was not limited to considering only the earnings guaranteed under the EPPA contract, as appellant argued, the factual findings are devoid of support for the court's calculation of a monthly net income of $4,500.

The trial court was required to make a *reasonable* estimate of appellant's net monthly income before applying the guidelines. *Otte v. Otte*, 368 N.W.2d 293, 296 (Minn.Ct.App.1985). Instead of reaching a reasonable estimate, the court merely listed appellant's gross income for each of the past four years, approximately $80,000, and concluded somehow that his net income was $4,500 per month. In light of the large proportion of appellant's disposable income obligated to child support ($1,935 per month), maintenance payments ($750 per month), and repayment of the profit-sharing loan ($700 per month), failure to make findings insuring the accuracy of the net income figure was erroneous.

Appellant claimed, and respondent did not contest, that a net monthly income based on his EPPA annual salary of $72,301 was $3,393.34. On appellant's $8,000 of yearly gross income over and above his salary, a conservative combined state and

federal tax would total approximately 40 percent. That would leave approximately 60 percent or $4800 per year, or $400 per month net. Thus, his approximate total net per month is $3,800, not $4,500. That difference is crucial given court-ordered monthly payments totaling $3,385 per month. Excluding the profit-sharing loan repayment, appellant claimed a modest $1,200 per month living expense, and the trial court order leaves nowhere near that amount for appellant.

In addition to remanding for a more accurate finding on appellant's net income, I would also remand to the court with instructions to reconsider maintenance and child support.

The trial court made no finding concerning appellant's ability to pay maintenance and meet his monthly living expenses. These findings are required under Minn. Stat. § 518.552, subd. 2 (1984). Section 518.552, subd. 2(f) specifically requires the court to consider the ability of the obligor spouse to pay maintenance. The majority states that lack of a finding on appellant's ability to pay is not fatal. I do not agree. The child support guidelines Minn.Stat. § 518.551, subd. 5 (1984) do not list profit-sharing loan repayments as an allowable deduction from gross income normally taken into account before applying the guidelines, but appellant's ability to pay maintenance must be looked at in view of his *total* financial picture, including sources of income and all reasonable expenses. Minn. Stat. § 518.552, subd. 2(f); *Knott v. Knott,* 358 N.W.2d 493, 496 (Minn.Ct.App.1984).

Here the combined total of the property award, child support order, maintenance order, and debt repayment are patently unfair to appellant based on a net income of slightly less than $4,000 per month.

In addition to the above court-ordered payments, appellant was ordered to carry substantial life insurance for the benefit of respondent and children, the bulk of which is at his own expense. In addition, the court failed to consider appellant's post-trial motion that he be awarded the dependency deductions for the five children. Common sense indicates that with respondent's gross taxable income limited to $9,000 per year maintenance, those dependency deductions are virtually meaningless to her. Appellant's attorney calculated the value of those five deductions at approximately $3,000–3,500 per year. If granted to appellant, the deductions would free up some disposable income for the benefit of himself and his family.

In previous dissolution cases, the Minnesota Supreme Court has affirmed disproportionately low property settlements for spouses when coupled with a high maintenance award. The supreme court has also affirmed disproportionately high property awards to a spouse when coupled with little or no maintenance. However, I know of no case where the supreme court has sanctioned a disproportionately low property settlement for the obligor spouse while at the same time requiring the spouse to pay a disproportionately high maintenance award and child support at 100% of the guidelines.

A remand to the trial court to correct the errors I have noted will not bar respondent from coming back to the trial court for an increase in child support once the profit-sharing loan is paid off or if appellant experiences other substantial increases in income and respondent can demonstrate changed circumstances which render the original decree unreasonable and unfair. Minn.Stat. § 518.64, subd. 2 (1984). I would find that appellant is entitled to relief from the present decree and would remand to the trial court to reconsider property division, maintenance, and child support.