**In re the Marriage of Becky Maree HEINLEIN, Petitioner, Appellant,**

v.

**Joseph Edward HEINLEIN, Respondent.**

**No. C6–87–107.**

Court of Appeals of Minnesota.

June 16, 1987.

Carl C. Drahos, Drahos and Young, Bemidji, for appellant.

Joseph Edward Heinlein, pro se.

Considered and decided by RANDALL, P.J., and WOZNIAK and NIERENGARTEN, JJ., with oral argument waived.

## MEMORANDUM OPINION

WOZNIAK, Judge.

This is an appeal following the denial of appellant's motion for restricted visitation rights.

## FACTS

On October 27, 1986, the marriage of appellant Becky Heinlein and respondent Joseph Heinlein was dissolved. The parties' 16–year marriage produced three children; Michael, age 12, Keith, age 9, and Sally, age 3. At the dissolution proceeding and the subsequent motion for amended findings, Becky moved the court to limit and restrict Joseph's visitation rights. She sought restricted visitation, claiming Joseph's current girlfriend and housemate, Carolyn Varner, posed a danger to the children's health and welfare. Joseph had met and become romantically involved with Varner in November 1985 while on a job in the State of Virginia. Shortly after he returned to Minnesota, he admitted to his involvement with Varner, and the parties attempted reconciliation until the eventual separation in April 1986. He then moved to the State of Virginia to reside with Varner.

Becky's fears are based upon alleged telephone calls made by Varner to the Heinlein home during the attempted reconciliation period. During this period, Joseph called Varner in an attempt to end their relationship. Subsequently, Varner allegedly made a series of calls to the Heinlein home. Varner allegedly spoke to Mike and Keith Heinlein a number of times. Keith testified that Varner told him she would burn down the Heinlein home if Joseph did not return to Virginia. Mike Heinlein testified that Varner asked him to forward the following message to Becky: "Tell your mother, ha-ha, I won." Mike also testified that Varner stated in another call that if the children ever spoke to their dad again, she would hurt their sister.

Joseph claimed Varner never made the threatening calls. He relied upon Varner's denial of making the calls and upon an examination of her telephone records. However, neither Varner nor the telephone records were available at the proceedings. Joseph testified that he attempted to pacify and speak with the children about the alleged calls once he learned of them, but that he never believed they had been made. He also testified that Becky consistently denied and interfered with his visitation rights.

Mike and Keith Heinlein stated to the trial court judge in chambers that they were afraid of Varner and did not wish to be near her when they visited their father. Becky also contended Joseph's living relationship posed a danger to the children's health and that their home would be too crowded for visitation since Varner was

pregnant and already had custody of her two other children.

Becky thus sought to restrict visitation to the State of Minnesota and at times when Varner was not present. The original decree permitted visitation every other weekend and four consecutive weeks over summer vacation at the location of Joseph's residence. The court found insufficient evidence of endangerment to the children to form a basis to restrict visitation. The court desired more information regarding Varner's character and past actions.

Becky then moved for amended findings and a new trial. The court denied her motion for restricted visitation. Joseph was found to be a kind and loving father who posed no harm to the children. The court also failed to find that any threats were made to the children. Finally, the court noted that Joseph would guard the children against danger, if there was any danger.

## ISSUE

Did the trial court abuse its discretion in denying a motion to restrict the visitation rights of the noncustodial parent?

## DECISION

The trial court is afforded broad discretion in making visitation orders, and the appellate courts will not interfere with the order unless it is clearly erroneous. *Griffin v. Van Griffin*, 267 N.W.2d 733, 735 (Minn.1978); *Halper v. Halper*, 348 N.W.2d 360, 363 (Minn.Ct.App.1984). The court may not restrict visitation rights unless it finds that the visitation is likely to endanger the child's physical or emotional health or impair the child's emotional development. Minn.Stat. § 518.175, subd. 5 (1986). The ultimate question in visitation disputes is what is in the children's best interest. *Id.; Clark v. Clark*, 346 N.W.2d 383, 385 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. June 12, 1984).

Becky contends the children's physical and emotional health is threatened by visitations in Varner's presence. She cites cases which restricted custody and visitation in situations where the spouse or cohabitant of the noncustodial parent posed a danger to the children's health and welfare. In *Simonson v. Simonson*, 292 N.W.2d 12 (Minn.1980), a parent was denied custody because her cohabitant was a known sex offender. Also, in *Bryant v. Bryant*, 264 Minn. 509, 119 N.W.2d 714 (1963), the noncustodial parent's visitation rights were restricted because his second wife argued with the visiting children, spoke to them with harsh language, physically punished them, failed to care for their physical safety, fed them poorly, and treated them less favorably than her own children. It is Becky's contention that Varner's threats pose similar or even worse dangers than in *Simonson* or *Bryant*.

The trial court held, however, that Becky failed to show past conduct or other character traits demonstrating Varner was a danger. In contrast, *Simonson* entailed documented evidence of the cohabitant's past felonies and sexual molestation, while *Bryant* involved specific instances of direct mistreatment of the visiting children. Here, there are only claims of threatening telephone calls which Joseph testified were not made. The trial court held there was no threat to the children. Taken alone, the alleged calls fall short of the required persuasive evidence of endangerment to the children's physical and emotional health. We do not find that the trial court's ruling was clearly erroneous since it found the alleged calls alone were insufficient proof of endangerment and also found that Joseph was a fit and loving parent capable of protecting the children from all dangers.

Affirmed.