In re the Marriage of Dolores B.
QUINLIVAN, Petitioner,
Appellant,

v.

Keith V. QUINLIVAN, Respondent.

No. C1-84-1070.

Court of Appeals of Minnesota.

Dec. 11, 1984.

Bob A. Goldman, Tuveson, Goldman & Nelson, Chartered, Albert Lea, for appellant.

Rolf O. Slen, Christian, Slen, Savelkoul, Johnson, Broberg & Kohl, Albert Lea, for respondent.

Heard, considered, and decided by RANDALL, P.J. and HUSPENI and FORSBERG, JJ.

## OPINION

RANDALL, Judge.

Dolores Quinlivan petitioned for dissolution of her marriage to Keith Quinlivan. On May 7, 1984, after a two day trial, the court entered judgment distributing the assets of the parties. Dolores's motion for amended findings was denied and she appealed. We affirm.

## FACTS

Dolores and Keith ("appellant" and "respondent") were married in October of 1971. Appellant had children from a previ-

ous marriage who lived with the parties during the marriage. Appellant's children received social security benefits, on behalf of their deceased father, during a portion of the marriage. Respondent also had children from a previous marriage, for whom he paid child support. At the time of this marriage, appellant owned a house worth $19,000 encumbered by a $7,216 mortgage, and various other assets of which she had become sole owner upon the death of her first husband.

Shortly before the parties were married, they entered into an antenuptial agreement which provided that all of appellant's real and personal property would descend to her children upon her death and would be free from any claim on the part of respondent. The antenuptial agreement listed appellant's property as the following:

A. Savings certificate at First Federal in the approximate amount of $21,989.58.

B. 28 shares of Litton stock.

C. Nine U.S. Savings bonds, each of $50.00 maturity value.

D. Savings account of $3,000.00 at Freeborn National Bank.

E. $5,000 life insurance policy on Dolores.

F. Household goods, furniture, appliances, and personal property used in, and about, the home.

G. Automobile.

H. The home.

The trial court determined that the Litton stock, U.S. Savings bonds, and the life insurance policy were non-marital assets and awarded them to appellant in kind. The trial court awarded other non-marital assets to her as follows: $21,990 in cash (originally the First Federal savings certificate); $3,000 in cash (originally the Freeborn National savings account); and $10,000 in cash (an inheritance Dolores received from her parents during the marriage). These non-marital assets were awarded out of the total assets on hand.

The trial court found that at the time of the divorce the present value of the residence was $60,000.00 and that the $7200 mortgage had been paid off. The court determined that 62% ($37,200) of the house's value represented appellant's original non-marital asset, and 38% ($22,800) was a marital asset. Improvements were made during the marriage which increased the value of the house. Respondent testified that the fair market value of the labor and materials that went into these improvements was $21,588.

The trial court found that the parties' miscellaneous household goods had a value of approximately $10,000, 44% ($4,400) representing appellant's non-marital assets, and 56% ($5,600) representing the marital assets of the parties. The parties owned three vehicles at the time of the divorce which the trial court treated as marital property.

The trial court determined that respondent's non-marital assets included miscellaneous household goods and a teacher's retirement fund valued at $5,953.00, and awarded him these in kind. By agreement, appellant does not contest the designation of respondent's teacher's retirement fund as non-marital.

Both parties worked during the marriage. Respondent worked as a college professor, construction worker, and as a pension consultant. Appellant had her own business as an interior decorator. The parties pooled their money and transferred it into various personal, business, and savings accounts throughout their marriage.

The trial court valued the total assets of the parties at $203,740 (excluding the non-marital assets awarded in kind). The court then subtracted $76,590 from this total as being non-marital assets of appellant, arriving at $127,510 for the value of the marital property. The trial court divided the $127,510 of marital property roughly in half. The result of the court's decision is that appellant received non-marital and marital property worth $141,520 plus her Litton stock and U.S. Savings Bonds. Respondent received marital property worth $62,-

220 plus miscellaneous household goods and his teacher's retirement fund.

## ISSUE

1. Did the trial court err in apportioning the homestead between marital and non-marital interests?

2. Did the trial court err in finding the value of the homestead was $60,000?

3. Did the trial court err in failing to allow and award to appellant her non-marital inheritance assets?

4. Did the trial court err in dividing pension benefits immediately rather than reserving jurisdiction for a later determination?

## ANALYSIS

### I.

*Marital assets*

Appellant contends that the trial court erred in its finding that the house was both a marital and non-marital asset. Appellant asserts that the trial court should have assigned the house to her as non-marital property before distributing the marital property between the parties.

It is undisputed that the house was valued at $19,000 when Dolores and Keith married, and was subject to a $7,216 mortgage. The mortgage was paid off during the marriage and improvements were made to the property through the joint efforts of the parties. The trial court found that the house had a value of $60,000 at the time of the dissolution.

■ Non-marital property includes both property acquired before the marriage and the increase in value of that property. Minn.Stat. § 518.54 (1982). The Minnesota Supreme Court has set forth the following formula to use in apportioning the increase in equity between marital and non-marital assets:

> The present value of a nonmarital asset used in the acquisition of marital property is the proportion the net equity or contribution at the time of acquisition bore to the value of the property at the time of purchase multiplied by the value of the property at the time of separation. The remainder of equity increase is characterized as marital property and is distributed according to Minn.Stat. § 518.58 (1980).

*Brown v. Brown,* 316 N.W.2d 552, 553 (Minn.1982); *see also Schmitz v. Schmitz,* 309 N.W.2d 748, 750 (Minn.1981).

This is apparently the formula that the trial court used in apportioning the homestead between marital and non-marital property. Applying this formula to the facts, the numbers are as follows: $11,784 (appellant's equity in the home at the time of the marriage) divided by $19,000 (the value of the home at the time of the marriage) is equal to 62%. Sixty-two percent of the value of the home at the time of the dissolution ($60,000) is $37,212.63, which appellant received. The court then characterized the remaining $22,787.37 as marital property, and awarded half to each party ($11,393.69).

■ Appellant contends that she is entitled to the entire increase in value of the house for several reasons, the first being that the mortgage was paid off with the social security benefits of her children. An examination of the record, however, does not bear this out. There was no testimony that the children's social security benefits were used exclusively for mortgage payments, and exhibits appellant introduced which purported to prove it were inconclusive. Even assuming appellant had earmarked those benefits for home mortgage payments, that would not be determinative, as doing so would have freed up part of the joint pool of appellant's and respondent's wages which would normally go for mortgage payments to go toward the procurement of other marital assets. We cannot say the trial court erred in granting respondent approximately 19% of the value of the parties' homestead at the time of the divorce.

■ Appellant also contends that sums expended for substantial improvements

made on the property do not constitute marital property. The Minnesota Supreme Court has held that the sums expended for improvements are properly attributable to the parties' joint efforts and constitute marital property. *Faus v. Faus*, 319 N.W.2d 408, 412 (Minn.1982). Appellant argues that *Faus* is not applicable since the expenditures for improvements were also made from the social security benefits of her children. Again, there is no evidence to show this was so. Appellant also maintains that the *Faus* holding applies only to "sums expended" and not to "contributions of labor" made by the parties. We find this argument unpersuasive.

Appellant argues that a recent case decided by this court, *Berry v. Breslain*, 352 N.W.2d 516 (Minn.Ct.App.1984), supports her contentions. In *Berry*, this court reversed the trial court's decision awarding a lien in favor of the husband on his wife's non-marital homestead, holding that the increase in value during the marriage was due solely to inflation and was not the result of improvements. We concluded that Breslain's contributions toward the mortgage were essentially rent and did not create any substantial equity.

This case is distinguishable from *Berry* by three significant factors. First, in *Berry* there was no finding specifically designating the house as marital or non-marital property. Here the trial court made an explicit finding as to both. Second, the improvements on the house in *Berry* were not substantial and did not affect the house's value. Here, the improvements were valued at $21,588. Finally, the *Berry* marriage lasted only four years, and during the marriage, each monthly mortgage payment reduced the $36,000 mortgage balance by only $38. In other words, no substantial equity was built up. Here, however, the entire $7,216 mortgage balance was paid off during the twelve year marriage. *Berry* is thus not controlling.

Appellant further contends that the antenuptial agreement precludes the apportionment of the homestead between marital and non-marital property. The antenuptial contract entered into by the parties lists the home as part of appellant's estate at the time of the agreement and provides as follows:

> Keith V. Quinlivan does hereby agree that Dolores B. Meyer and her estate shall hold all real and personal property which she now owns or may hereafter acquire free from any claim on the part of Keith V. Quinlivan arising by reason of their marriage, including all rights in intestacy, right of election to take against a will, or otherwise.

The Minnesota Supreme Court has held that such antenuptial contracts are controlling upon dissolution and not only in the event of death. *Hafner v. Hafner*, 295 N.W.2d 567, 572 (Minn.1980).

The formula approved in *Schmitz* and applied by the trial court does not violate the antenuptial agreement. The formula provides that appellant be awarded the "home" listed in the antenuptial agreement. When that agreement was drawn, the home had $11,784 equity. The antenuptial agreement did not speak to subsequent mortgage payments and improvements made on the home. Thus, fairness dictates that only that amount be segregated for appellant. The antenuptial agreement does not exempt the home from being considered partially marital property.

## II.

### Property valuation

Appellant argues that the trial court erred in finding the value of the homestead based on respondent's testimony that in his opinion the residence had a value of $60,000 to $65,000. Appellant argues that the trial court should have used the $45,000 value listed by respondent on a financial statement signed by both parties two years earlier, which was submitted to the trial court as part of an exhibit. The house was not professionally appraised, then or now.

The trial court stated in its memorandum that it gave little credibility to the financial statement because two years had passed and many improvements had been made to

the house during that time. The trial court also concluded that in its experience, residential values on financial statements are usually set forth in a very off-hand manner and have very little probative value on the issue of market value. The trial court noted that respondent's vocational experience lent some credence to his present opinion on the value of the residence.

■ Minnesota Rule of Civil Procedure 52.01 provides that findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses. While the $60,000 value might not be as accurate as it could have been if the parties had employed a professional appraiser, this figure is not clearly erroneous.

### III.

*Allocation*

Appellant contends that the trial court erred in failing to award her the non-marital inheritance assets she received from her parents. However, the trial court made it clear it did award this inheritance to appellant as non-marital property.

### IV.

*Pension benefits*

Appellant contends that the trial court erred in its division of the parties' pension benefits. The trial court considered all the pension accounts as marital property (except respondent's teacher retirement fund), divided them roughly in half, and assigned credit accordingly. Each party was then awarded his or her own IRA, Keogh, and pension accounts on this basis. (Had appellant not agreed that respondent's teacher retirement fund was non-marital, arguably any increase in the cash value of that $5953 fund occurring during the marriage could have been the subject of an equitable division.)

■ Appellant asserts that the various IRA, Keogh, and pension accounts should be divided so that each party receives 50%

when they commence to draw them, citing *Janssen v. Janssen,* 331 N.W.2d 752 (Minn. 1983). In the *Janssen* case, the Minnesota Supreme Court ordered apportionment of pension interests "only if and when such benefits are paid." *Id.* at 756. But this method has usually been employed in situations when the present value of the pension is speculative, as in *Janssen,* or where an undue hardship would otherwise occur. *See Taylor v. Taylor,* 329 N.W.2d 795 (Minn.1983). In this case the present market value of the pension benefits was not disputed and neither party claimed undue hardship. The method the trial court used "is preferred where there are sufficient assets available at the time of the divorce to divide the present value of the retirement benefits without causing undue hardship to either spouse and where testimony on valuation is not unduly speculative." *Id.* at 798–799. This method also has the advantage of avoiding continuing jurisdiction by the court. The trial court did not err in dividing the pension benefits based on their present value.

### DECISION

The trial court's division of marital property, its allocation of assets between marital and non-marital, its valuation of assets, and its division of pension benefits was supported by the evidence and was fair.

Affirmed.