**In re the Marriage of Lynn KNOTT, Petitioner, Respondent,**

v.

**Darwin Gene KNOTT, Appellant.**

**No. CO–84–976.**

Court of Appeals of Minnesota.

Dec. 19, 1984.

Paul E. Rockne, Zumbrota, for respondent.

Peder B. Hong, Red Wing, for appellant.

Heard, considered and decided by POPOVICH, C.J., and PARKER and SEDGWICK, JJ.

## OPINION

PARKER, Judge.

Gene Knott appeals from a dissolution judgment and decree granting Lynn Knott $650 per month in support for their three children and maintenance of $300 per month during periods when she is unemployed. He contends the trial court abused its discretion in setting the amount of his support and maintenance obligations. We reverse and remand.

## FACTS

Gene and Lynn Knott were married in June 1976 and separated in November 1982. He is now 27 and she is 30 years old. They have three children, ages six, four, and two. During the marriage they lived on their farm in rural Kenyon, Minnesota. Lynn Knott now rents a house in Kenyon, and Gene Knott lives on the farm with another woman and her four children.

After graduating from high school Lynn Knott worked in a factory for one year, then attended vocational school. She worked as a bookkeeper and typist for two years before marrying Gene Knott, who asked her to quit her job and help him work on the farm. After the separation she applied and was rejected for approximately six jobs in the Faribault-Kenyon area, and she had not obtained a job at the time of trial.

In May 1978 Lynn Knott was diagnosed as having a seizure disorder. According to

her physician the disorder is well controlled with medication. Her last seizure occurred in February 1983 and was caused by a combination of stress and failure to take her medication. As a result she lost her driver's license, but she anticipated regaining it in the spring of 1984 after one year free of seizures.

Production Credit Association (P.C.A.) extended operating loans to the Knotts. At trial Leo Kahnke, the branch manager for P.C.A., testified that he estimated Knott would fall $6,000 short in making payments on principal during 1984 and that P.C.A. would not decide whether to extend financing for 1984 until the dissolution was completed.

The record shows that the couple's assets were $233,000 and liabilities were $249,000. In 1982 their federal adjusted gross income was $9,333; however, this includes a deduction of $18,372 for depreciation. They paid Social Security taxes on income of $32,400. In 1983 their cash flow was more than $144,000, yet their federal adjusted gross income was $98, including a deduction of $16,935 for depreciation. They paid Social Security taxes on income of $35,700.

The trial court found there was no marital property. Gene Knott was granted full title to the farm and ordered to assume all the farm indebtedness. Lynn Knott was granted custody of the three children and $650 per month in child support. The court found that she had a limited earning capacity because of the seizure disorder and awarded maintenance of $300 per month during times when she was employed less than 25 hours per week. The court also ordered Gene Knott to maintain all existing life, health, accident, medical, and dental insurance for the children and ordered him to pay uninsured medical expenses up to $500 per year. According to the decree he was behind $707 in child support, and the court ordered him to pay it within 90 days.

After reviewing the judgment and decree, Leo Kahnke of P.C.A. wrote Gene Knott advising him that in view of the child support and maintenance obligations in the decree he would not renew the operating loan balance or provide a loan for 1984. He advised Knott to liquidate the farm or risk foreclosure on the loan.

## ISSUE

Did the trial court err in setting the amount of appellant's child support and maintenance obligations when there is no evidence in the record of his net income?

## DISCUSSION

1. The trial court made no findings as to appellant's net income. Appellant argues that his annual income should be considered to be $14,448, obtained from averaging his federal adjusted gross income for 1979–1982. Since the child support, maintenance, insurance, and medical expense payments add up to $1,202 per month, appellant argues these obligations equal or exceed his monthly income. He also claims that the court's order is responsible for P.C.A.'s decision to stop carrying his operating loan balance.

Respondent has taken the position that she has only to show a need for child support and that the trial court's order can be sustained simply on the basis that she has shown a need for $650 per month. She says it is appellant's responsibility to "support his family in the same manner as in the previous seven years * * *. He should carry the burden of conclusively establishing that he cannot meet that burden."

The trial court was apparently influenced by this argument and by the fact that in October 1982 appellant ordered respondent to move out, and eventually his paramour and her four children moved in. There is evidence that he spent substantial sums on long-distance calls to her even before the separation, to which the trial court referred in his order denying appellant's post-trial motion for amended findings:

The record here shows a ready source for his indulging himself for entertainment. Although he protests a financial catastrophe, he has taken on significant new responsibilities simply choosing to

consume his resources on interests other than his former spouse and children.

Child support is to be determined without regard to marital misconduct and requires a consideration of the needs and financial resources of both parties and the children. Minn.Stat. § 518.17, subd. 4 (1982). The noncustodial parent's ability to pay is not to be presumed, even though such a presumption may seem to be justified because of misconduct. We agree with the trial court that appellant's needs are to be determined without reference to any new obligations; however, there is no evidence whatsoever of those needs in the record.

Furthermore, in order to apply the child support guidelines in Minn.Stat. § 518.551, subd. 5 (Supp.1983), the trial court must arrive at a reasonable estimate of his net monthly income. There is no way the court could do that based on the financial data in the record. It is virtually impossible to determine from the annual tax returns because of the business and depreciation deductions taken for the farm, and the Social Security forms and bookkeeping summary are also inconclusive. Although the problem of determining the net income of a self-employed farmer is difficult, an expert in agricultural accounting should be able to construct a net disposable income figure with a sufficient degree of accuracy to be of assistance to the court.

2. Appellant argues that maintenance is not justified because there is no evidence that Lynn Knott's earning capacity is impaired. On the contrary, there is evidence that because of the seizure disorder and the resulting forfeiture of her driver's license, she cannot drive to and from a place of employment, that she has unsuccessfully tried to obtain a job, and that people with seizure disorders are often not accepted by prospective employers.

Minn.Stat. § 518.552, subd. 1 (1982), provides that maintenance shall be awarded if the spouse seeking it lacks sufficient property to provide for reasonable needs and is unable to adequately support himself or herself considering all relevant circumstances. Lynn Knott received absolutely no property settlement and does have an impaired earning capacity. She also has three very young children. We hold that the trial court did not abuse its discretion in determining that she needed maintenance for a substantial period of time.

Although the statute lists seven factors to be considered (*see* Minn.Stat. § 518.-552, subd. 2), the issue in determining maintenance is basically the financial needs of the spouse receiving maintenance and the ability to meet those needs balanced against the financial condition of the spouse providing the maintenance. *Krick v. Krick*, 349 N.W.2d 350, 352 (Minn.Ct. App.1984) (citing *Erlandson v. Erlandson*, 318 N.W.2d 36 (Minn.1982)). Again, there is no evidence in the record of his financial condition in terms of net income.

We therefore hold that the trial court erred in setting appellant's child support and maintenance obligations when there is no evidence of his net disposable income in the record. We do not accept respondent's contention that it is appellant's responsibility to show he cannot pay the amount set by the trial court. Both parties to a dissolution have a substantial interest in ensuring that need as well as ability to pay are demonstrable on the record. Otherwise, an appellate court has no basis on which to evaluate the exercise of a trial court's discretion and has no choice but to reverse.

## DECISION

We reverse and remand with directions to determine the needs and financial resources of both parties at the present time. The court shall also appoint an expert witness to construct a net disposable income figure for the years 1982 and 1983 and shall apportion the cost of obtaining the expert testimony to the parties to the extent of their ability to pay.

Reversed and remanded.