In re the Marriage of Marie V. OTTE,
petitioner, Respondent,

v.

Thomas Lynn OTTE, Appellant.

No. C8–84–2037.

Court of Appeals of Minnesota.

May 21, 1985.

Peter J. Schmitz, Northfield, for appellant.

Charles S. Zimmerman, Minneapolis, for respondent.

Heard, considered and decided by NIER-ENGARTEN, P.J., and FOLEY and LESLIE, JJ.

## OPINION

LESLIE, Judge.

This marital dissolution matter was tried before the court in July 1983. After trial the court amended its original findings and entered judgment dividing the marital estate, and awarding child support, spousal maintenance and attorney's fees to respondent. We affirm in part, reverse in part and remand.

### FACTS

Respondent Marie V. Otte and appellant Thomas Lynn Otte were married in April 1976 when she was 19 and he was 22. Four children were born during their seven year marriage.

· Appellant graduated from high school in 1972. In 1974 he purchased his first major farm implement, a combine, and began a

custom farm work business. The next summer he obtained financing to purchase a tractor and expand his business. A financial statement prepared in August 1975 indicated he had a net worth of $20,000. Shortly after the marriage, another financial statement placed his net worth at $51,000. Appellant's custom farm business continued to grow. A 1983 P.C.A. loan application indicated he owned $338,250 worth of farm machinery, subject to $188,873 in encumbrances.

Appellant used his equipment both in his custom farm operation, and to till the parties' own acreage. In 1978 appellant and respondent purchased a 235 acre farm from respondent's parents for $150,000 on a contract for deed. Respondent's father testified that he and his wife sold the farm well below its market value of $250,000 to $300,000, intending the difference as a gift to their daughter. Appellant testified that the fair market value of the farm in 1978 was $150,000. Appellant farmed the 165 acres of tillable soil on the homestead as well as land he rented from other farmers. The summer of the trial, 1983, he farmed a total of 580 acres.

Appellant's farming operations generated a substantial cash flow in the years between 1977 and 1983. The parties disagree on how their actual income should be calculated. Appellant claims his income should be computed by including the depreciation deductions he took on his farming equipment for federal and state tax purposes. This computation produces an average income of $6,296. Respondent insists those figures do not accurately reflect their actual income because their standard of living was much higher. She points to a 1982 earnings worksheet estimating the family living expenses at $27,384. She argues that depreciation deductions should not be considered when computing income. Her calculations result in an average income of $37,532 during the seven year marriage. The two methods of computing income compare as follows:

|  | Income without depreciation deductions | Income with depreciation deductions |
|---|---|---|
| 1977 | $20,537.00 | $ 4,470.00 |
| 1978 | 54,425.00 | 33,336.00 |
| 1979 | 48,449.00 | 6,842.00 |
| 1980 | 57,231.00 | 7,817.00 |
| 1981 | 65,301.00 | 16,493.00 |
| 1982 | 15,765.00 | (47,526.00) |
| 1983 | 77,454.00 | 22,638.00 |
| Average Income | $37,532.00 | $ 6,296.00 |

The trial court did not include in its findings of fact a finding on appellant's income or average income. The only reference to his income is in the memorandum attached to the amended findings of fact:

[Appellant] also argues that child support payments are not justified by his earnings. This argument is certainly substantiated by the new taxable income figures shown on the tax returns introduced in evidence. However, obviously these returns could not reflect the actual cash income of the parties available for living expenses. The family's net assets, disregarding the increase in value on the real estate, increased $75,000 to $100,000. The primary sources of income were the crops and [appellant's] custom work. *On this basis the Court found the [appellant's] monthly income over the past years had to be in the neighborhood of $2,000 to $2,500 per month.*

*Value of the Homestead*

The trial court awarded the parties' farm to respondent, subject to a $6,500 lien in favor of appellant. The parties stipulated the value of the farm house and the sur-

rounding 5.7 acres at $75,000, and the 230 acres of farmland at $165,000. The outstanding liability on the contract for deed was approximately $109,000 at the time of the trial. The court accepted the stipulation and appellant does not contest this finding on appeal.

*Value of the Farm Machinery*

Appellant protests the trial court's valuation of the farm machinery which it awarded to him. The trial court in its original findings of fact found the market value of the farm machinery to be $331,250. Evidence at trial included financial statements in loan applications prepared for the P.C.A. in 1982 and 1983. The 1982 application indicated a value of $372,000 and the 1983 application indicated a value of $338,250. Appellant presented testimony from two dealers that the value of the machinery was less than those estimates: about $297,-500. Appellant himself testified that the market value was considerably less than that $297,500 because, if he were to sell the machinery, he could only get auction value in a very soft farm economy.

In its memorandum attached to the amended findings of fact, the trial court indicated it reconsidered its valuation of the farm machinery and reduced it by $17,-500. The court nonetheless arrived at the same valuation finding as it originally found: $331,250.

*Respondent's Income*

Neither party contests respondent's earnings since they separated in 1982. Respondent graduated from high school in 1975. She received key punch training while in school, but could find no position where she could use that skill. Instead she took a job at a restaurant as a cook. After her marriage she worked only sporadically at minimum wage positions. In the three months following the original dissolution decree respondent worked as a dishwasher and cook and earned a total net income of $125 after paying for child care and automobile expenses.

The court found that respondent could not take advantage of her training as a key punch operator in the future because that technology is obsolete. Further, the court noted that a hand injury as well as a thyroid problem could impair her ability to find other forms of employment.

## ISSUES

1. Did the trial court abuse its discretion by awarding the custodial parent $700 per month in child support?

2. Did the trial court abuse its discretion by awarding respondent $300 per month in spousal maintenance for seven years?

3. Did the trial court commit clear error when it valued appellant's farm machinery for purposes of dividing the marital estate?

4. Did the trial court abuse its discretion when it ordered appellant to pay interest due on a contract for deed on the farm awarded to respondent?

5. Should appellant receive a new trial on the value of growing crops when newly discovered evidence indicates the trial court substantially overvalued those crops?

6. Did the trial court abuse its discretion when it ordered appellant to pay $3,000 of respondent's attorney's fees?

## ANALYSIS

### 1. Child Support

The parties agree that the award of child support is governed by the child support guidelines, Minn.Stat. § 518.551, subd. 5 (1982). We recognized in *Knott v. Knott,* 358 N.W.2d 493, 496 (Minn.Ct.App.1984) that a reasonable estimate of net monthly income is needed before a court can apply the guidelines, since the guidelines establish the amount of support according to the non-custodial parent's monthly income. Thus, a trial court should make a specific finding on net income to enable appellate review.

Appellant challenges the child support award on two grounds. He first claims that the trial court erred by not making a specific finding on his monthly income. The trial court's findings address

appellant's income only by noting that he increased the family's net worth by $75,000 to $100,000 during their seven year marriage, not including their real estate holdings. The court's memorandum is more precise and estimates appellant's monthly income at between $2,000 and $2,500 per month. Although a trial court should make its factual determinations within its findings of fact, misplacement in other parts of the decision is not reversible error so long as the determination is otherwise satisfactory. *See generally Graphic Arts Educational Foundation, Inc. v. State,* 240 Minn. 143, 145–46, 59 N.W.2d 841, 844 (1953).

Appellant also challenges the trial court's finding that he has earned an average of $2,000 to $2,500 per month as contrary to the evidence. He argues that the only evidence on his income was his tax returns, which established an average annual income of $6,296, or about $525 per month. Thus he contends the finding is clear error and must be reversed.

■ After reviewing the record we believe the evidence was not sufficiently developed to support the court's findings, but not for the reasons advanced by appellant. In *Knott* we held that tax returns may alone be insufficient data to determine income when substantial depreciation deductions are taken on a farming operation. *Id.* at 496. Depreciation must be deducted from income for purposes of calculating taxable income, but taxable income is not always a reliable indication of net income.

In this case the use of depreciation deductions diminished appellant's average taxable income by 84%, or from $37,532 to $6,296. The trial court apparently believed that appellant's income was somewhere between those figures. Although a self-employed person's income is not easily estimated with accuracy, this estimation, between such widely divergent figures, amounts to little more than a guess. The trial court's difficulty is manifest in its inability to estimate the income more accurately than $2,000 to $2,500 per month. For those reasons we remand for taking of

new evidence, including expert testimony. As we said in *Knott:* "Although the problem of determining the net income of a self-employed farmer is difficult, an expert in agricultural accounting should be able to construct a net disposable income figure with a sufficient degree of accuracy to be of assistance to the court." *Id.* at 496.

### 2. *Spousal Maintenance*

■ Spousal maintenance is governed by Minn.Stat. § 518.552 (1982), which allows an award if the court finds the spouse seeking maintenance:

(a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, especially during a period of training or education, and

(b) Is unable to adequately support himself after considering all relevant circumstances through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Courts should consider a number of factors listed in the statute including the spouse's financial resources, employment potential and standard of living, and the financial ability of the supporting spouse. Determination of maintenance is within the discretion of the trial court. *Erlandson v. Erlandson,* 318 N.W.2d 36, 38 (Minn.1982). Courts have interpreted the statute to require a balancing of the supporting spouse's financial needs and capacity against the other spouse's financial needs and capacity. *Krick v. Krick,* 349 N.W.2d 350, 352 (Minn.Ct.App.1984). Each case should be decided on its own facts. *Cooper v. Cooper,* 298 Minn. 247, 250, 214 N.W.2d 682, 685 (1974).

■ Appellant claims the trial court's findings are insufficient since it did not find his income. The spousal maintenance statute, however, does not explicitly require a finding of income, but requires only that the trial court consider appellant's income. The trial court's memorandum, as well as its findings, indicates that the court

considered appellant's income when making this award. The record also indicates that the court considered respondent's financial needs and her ability to generate income. Accordingly, we will not disturb the trial court's exercise of its discretion in awarding $300 per month in spousal maintenance for seven years.

### 3. Property Division

■ Appellant attacks the trial court's amended property division on several grounds. A trial court has broad discretion to make property division awards, *Johns v. Johns*, 354 N.W.2d 564, 566 (Minn.Ct.App. 1984); however, a trial court's decision must be supported "by either clear documentary or testimonial evidence or by comprehensive findings issued by the court." *Ronnkvist v. Ronnkvist*, 331 N.W.2d 764, 766 (Minn.1983).

*Sufficiency of evidence on machinery value*

■ First, appellant points out an apparent discrepancy in the figures the trial court used to find the value of his farm machinery. In its memorandum the trial court stated it amended its original finding to reduce the value of the farm implements. It stated it subtracted $17,500 from the 1983 P.C.A. valuation it relied upon in its original findings. The court, however, used the wrong figure for the P.C.A. valuation.

Appellant also contends the court erred when it relied upon the P.C.A. valuation to make its finding on the market value of the implements. He claims that *Quinlivan v. Quinlivan*, 359 N.W.2d 276 (Minn.Ct.App. 1984) holds reliance upon financial statement estimations is error. *Quinlivan* stands for the very different rule that a trial court may in its discretion disregard estimations prepared for financial statements.

The trial court properly relied upon the P.C.A. financial statement to find the market value of the implements. That statement was prepared only a few months before trial, and although not conclusive evidence, is sufficient to support the court's findings of fact. To some extent appellant and his witnesses persuaded the trial court that the equipment was worth less than the original finding, and the trial court—albeit using an incorrect figure—reduced its valuation. This method of valuing the implements is not error, for "valuation is necessarily an approximation in many cases, and it is only necessary that the value arrived at lies within a reasonable range of figures." *Hertz v. Hertz*, 304 Minn. 144, 145, 229 N.W.2d 42, 44 (1975). Accordingly we affirm the trial court's method of finding the value of the farm implements, but reverse and remand for correction of its mistaken computation of that value, and for any modification of the property division deemed necessary after that correction.

*Payment of interest on farm awarded to respondent*

■ Appellant challenges the property division on two additional grounds. First, he claims the court erred when it ordered him to pay approximately $9,000 in interest incurred on the contract for deed on the farm awarded to respondent. This court, however, will not reverse a trial court order requiring a party to pay an encumbrance on an asset simply because that asset was awarded to the other party. *See Dahlberg v. Dahlberg*, 358 N.W.2d 76 (Minn.Ct.App.1984). Although appellant's liability for that sum may make his share of the marital property less than respondent's share, when the disparity does not make the division unfair the trial court will be affirmed. *Ruzic v. Ruzic*, 281 N.W.2d 502 (Minn.1979).

*Value of growing crops*

■ Finally appellant argues that the trial court erred by not amending its findings to reduce the value of the growing crops it awarded him. During trial in July 1983 testimony supported the trial court's finding that those crops would yield a profit of $22,500 after payment of an operating loan. With his motion for amended findings and a new trial, appellant filed an affidavit dated January 5, 1984 alleging

that sale of those crops will fail to cover his operating loan, resulting in a $37,000 net loss.

 Appellant urges that the trial court should have amended its findings to reflect the losses he alleges he suffered when selling his crops. A motion to amend findings, however, must be based upon the files, exhibits and minutes of the court, not upon newly discovered evidence which is not a part of the record. Minn.R.Civ.P. 52.02. Nonetheless this new evidence entitles appellant to a new trial as provided under Minn.R.Civ.P. 59.01(4), for which appellant made a proper motion.[1] The factual issue on remand shall be limited to the value of those crops.

### 4. Attorney's Fees

Trial courts have broad discretion to award attorney's fees to parties who show the need for financial assistance to carry on the proceeding. *Solon v. Solon,* 255 N.W.2d 395, 397 (Minn.1977); Minn.Stat. § 518.14 (1982). Although respondent owns a valuable farm, the trial court relied upon substantial evidence to find respondent requires financial assistance in meeting her needs. Thus the trial court did not abuse its discretion in awarding attorney's fees to respondent.

### DECISION

We reverse the child support award and remand that matter to the trial court for a specific finding and proceedings consistent with this opinion. We affirm the trial court's award of spousal maintenance. We reverse the trial court's valuation of appellant's farm machinery. We also reverse the court's finding on the value of certain crops growing at the time of trial and remand for the introduction of newly discovered evidence. In all other respects we affirm the trial court's property division but remand for any modification in the

property division the court deems equitable based on its new valuations of appellant's crops and farm machinery. Finally, we affirm the award of attorney's fees to respondent.

---

1. Generally marital estates are valued at the time of the trial. *See Marshall v. Marshall,* 350 N.W.2d 463 (Minn.Ct.App.1984). Where the value of an asset has changed substantially between the time of trial and appeal, however, a court should consider the effect of that change on the fairness of the property division. *See Bollenbach v. Bollenbach,* 285 Minn. 418, 175 N.W.2d 148 (1970) (taking judicial notice of the drop in value of stock between trial and appeal).