**In re the Marriage of Robert Keith CUMMINGS, Petitioner, Respondent,**

**v.**

**Patricia Lynn CUMMINGS, Appellant.**

**No. C9–85–470.**

Court of Appeals of Minnesota.

Nov. 12, 1985.

Alan Dorfman, Dorfman & Dorfman, Ltd., Minneapolis, for respondent.

Steven G. Heikens, Popham, Haik, Schnobrich, Kaufman & Doty, Ltd., Minneapolis, for appellant.

Considered and decided by SEDGWICK, P.J., and LESLIE and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

Patricia Cummings appeals from rulings in a judgment dissolving the marriage of the parties. We affirm on the issue of spousal maintenance and division of property for the period of premarital cohabitation. We reverse on issues of appellant's attorney's fees and classification of the marital nature of the commercial property. We reverse and remand on issues of spousal

maintenance and distribution of marital property.

## FACTS

The parties began living together in May 1975, at 1520 West 27th Street, Minneapolis, a residence owned by respondent Robert Cummings. At that time, respondent was 38 years old and appellant was 21. By prior marriage, each party had one child. Appellant's child, Mindee, was age 2 and respondent's child, Charles, was age 4. Respondent has since adopted Mindee. Respondent had owned a hair design shop, the Golden Door, Inc., in downtown Minneapolis since 1963.

Approximately one year after the parties began living together, they acquired a residence at 2717 Hennepin Avenue South, Minneapolis, for $30,000. During the next three years, the first floor of the property was completely renovated into a commercial operation. The purchase and remodeling were financed in part with a $60,000 mortgage through Northeast State Bank of Minneapolis.

The parties were married in August 1979. At that time, the mortgage on the property at 2717 Hennepin had been increased to approximately $108,116. At the time of trial, the court found the fair market value of the property to be $162,000 and the mortgage to be $49,711. In addition, respondent acquired three additional loans during the marriage to complete the improvements to the business, with balances at the time of trial totaling $24,758. In February 1980, respondent dissolved the corporation and converted the business to a sole proprietorship, changing its name to The Scissors Circus.

Before and during the marriage, appellant raised her own child and also cared for respondent's son. Appellant prepared the meals and cleaned the house. Respondent testified that he also did his share of cooking and child-rearing. Both parties testified that appellant assisted in respondent's business, although the extent of her contribution and compensation is in dispute.

Appellant testified that prior to the marriage she worked, for a period of less than a year, all day on Saturdays as a receptionist at respondent's business and that she was paid hourly for her services. She also testified that she participated significantly in the renovation of the commercial building and that she was not compensated monetarily for those services. She stated that she increased the salon's retail product line by ten times greater than that which existed prior to their marriage, for which she received a salary based on what the business could bear with regard to tax savings. She testified that during the marriage she worked as a receptionist, bookkeeper, and manager for respondent's business and that she was paid hourly sometimes and in lump sums other times. In addition, she testified that she worked as a technical assistant for six months for a weekly local mid-day television show in which respondent was involved, and that the company paid her expenses but she received no other compensation.

Respondent testified that in late 1979, appellant worked two or three hours a day over a six-month period as receptionist and, toward the end of that period, was responsible for supplying payroll and other records to respondent's accountant. Respondent testified that appellant was paid for all the work she performed at the business. He also testified that prior to the marriage, appellant participated in the renovation of the building at 2717 Hennepin Avenue, but he described her participation as "very little."

Respondent has an eighth grade education and in 1954 was graduated from a Canadian cosmetology school. Appellant has a high school education, completed 12 months of an 18-month course in fashion merchandising at a vocational institute, and acquired her real estate license.

The trial court granted the dissolution of marriage and awarded Patricia Cummings sole legal custody and joint physical custody of Mindee O'Cummings, $522 per month in child support, the cash value of respondent's life insurance policy, the Individual

Retirement Account with a balance of $1,969.39, a portion of the personal property, $5,000 in attorney's fees, and an unfair hardship award of $20,000 over four years. The trial court awarded Robert Cummings joint physical custody of Mindee O'Cummings, all real property, the sole proprietorship, a portion of the personal property, and $25 worth of stock. No maintenance was awarded.

## ISSUES

1. Did the trial court err in basing its decisions on spousal maintenance and division of property on the five-year term of the marriage without including the three years of premarital cohabitation?

2. Did the trial court err in finding that appellant was not entitled to maintenance?

3. Did the trial court err in failing to find that the increase in equity in the commercial property constituted marital property subject to equitable division?

4. Was an award by the trial court of $20,000 over four years sufficient to avoid unfair hardship?

5. Did the trial court err in failing to award appellant more than $5,000 in attorney's fees?

## ANALYSIS

1. Appellant argues that when premarital cohabitation precedes the marriage, the two periods should be treated as a single transaction. In this case, the parties lived together for three years before getting married. Appellant argues that her contributions to the relationship and the business during this time should be taken into account in the division of property. Respondent contends that Minn.Stat. § 513.075 and § 513.076 (1984) compel the court to disregard the cohabitation period. The trial court found that both appellant and respondent received substantial benefits from each other as a result of their premarital living arrangement. Nevertheless, the court refused to base the maintenance and property distribution decisions on that arrangement in the absence of a written con-tract or a holding out to the community as husband and wife.

This court has stated that "[c]ourts have no power to distribute property but by statute." *Dammann v. Dammann*, 351 N.W.2d 651, 652 (Minn.Ct.App.1984). Minn.Stat. § 513.076 provides that

> [u]nless the individuals have executed a contract complying with the provisions of section 513.075, the courts of this state are without jurisdiction to hear and shall dismiss as contrary to public policy any claim by an individual to the earnings or property of another individual if the claim is based on the fact that the individuals lived together in contemplation of sexual relations and out of wedlock within or without this state.

Minn.Stat. § 513.075 states that a contract between a man and a woman who are living together out of wedlock in contemplation of sexual relations is enforceable as to terms concerning property and financial relations only if "(1) the contract is written and signed by the parties, and (2) enforcement is sought after termination of the relationship."

█ Although appellant admits that there was no written contract between the parties, she contends that Minn.Stat. § 513.075 and § 513.076 are not applicable because the cohabitation and marriage occurred prior to the June 1, 1980 effective date. We agree. There is a presumption in Minnesota against a statute having retroactive effect. Minn.Stat. § 645.21 (1984). The Minnesota Supreme Court has stated that absent a clear and manifest intent by the legislature to apply a statute retroactively, Minnesota laws have no retroactive effect. *Mason v. Farmers Insurance Companies*, 281 N.W.2d 344 (Minn.1979). There is no such legislative intent manifested in the statutes at issue here. The parties had no notice that a written contract would soon be required by the legislature. *Cf. Hollom v. Carey*, 343 N.W.2d 701 (Minn.Ct.App.1984) (rejecting a retroactivity argument and applying Minn.Stat. § 513.076 and § 513.075 where the parties

maintained a sexual relationship off and on through July 1981).

Appellant urges us to apply the case law that was controlling before the cohabitation statutes became effective. In *Carlson v. Olson*, 256 N.W.2d 249 (1977), Laura Carlson and Oral Olson lived together unmarried for twenty-one years. They held themselves out to the community as a married couple, raised a son to majority, and acquired a home and personal property. *Id.* at 250. After the relationship ended, Carlson brought a partition action to recover one-half of the property they acquired over the twenty-one years. The trial court divided the property equally upon a determination that the parties intended to divide it that way. *Id.* at 255. In addition, the trial court held that Carlson's share of the property constituted an irrevocable gift from Olson in consideration for the services she performed as wife and mother. *Id.* The Minnesota Supreme Court affirmed the trial court's holding. The state legislature then enacted the cohabitation statute and effectively reversed the *Carlson* decision by limiting the court's jurisdiction to hear cases only with written agreements. *See* Argument, *Minnesota's Cohabitation Statute*, 2 J.Law & Inequality 335, 336–37 (1984).

Even if *Carlson* does apply to this case, it is distinguishable because there is no evidence that the parties in this case held themselves out as husband and wife. They lived together for only three years before marrying, they did not file joint tax returns, and they did not enter into a written contract defining their rights and responsibilities.

■ Furthermore, the language of the marriage dissolution statutes requires that the property be acquired during the marriage. Minn.Stat. § 518.58 (1984) provides that the court's authority to divide assets between parties to a dissolution proceeding, absent a finding of unfair hardship, extends to "marital property." Marital property includes real or personal property "acquired * * * at any time during the existence of the marriage relation." Minn.

Stat. § 518.54, subd. 5 (1984). Property acquired before the marriage is "nonmarital property." *Id.* Because common law marriages are void in Minnesota, the term "marital relation" does not include a period of premarital cohabitation. *See Laikola v. Engineered Concrete*, 277 N.W.2d 653, 656 (Minn.1979); Minn.Stat. § 517.01 (1984).

■ Consequently, we hold that the trial court correctly disregarded the property acquired during premarital cohabitation because there was neither a written contract nor a holding out to the community as husband and wife.

■ 2. Appellant challenges the trial court's denial of spousal maintenance. A court may grant maintenance if it finds that either spouse

(a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, especially during a period of training or education, and

(b) Is unable to adequately support himself after considering all relevant circumstances through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Minn.Stat. § 518.552, subd. 1 (1984). The trial court has broad discretion in determining whether these conditions have been met, and its decision will be reversed only if there has been a clear abuse of discretion. *Leach v. Leach*, 356 N.W.2d 378 (Minn.Ct.App.1984).

The trial court specifically concluded that appellant is not in need of spousal maintenance from respondent now or in the future. The trial court found that her gross monthly income as a real estate agent is $750, which translates into $9,000 per year. The trial court awarded $522 per month in child support, which included a sum for appellant as the child's custodian. It found that respondent already provided appellant with an education, through which she acquired her real estate license. Furthermore, the court concluded that appellant

has adequate skills and resources to be self-supporting and that respondent does not have the ability to provide maintenance to appellant.

■ The trial court stopped short, however, in its analysis under Minn.Stat. § 518.552 by failing to make findings as to the expenses of either of the parties. Without such findings, it is impossible to review whether appellant meets the standards set forth in the statute. The trial court, not this court, should make findings as to the amount of the parties' reasonable and necessary expenses. *Durand v. Durand*, 367 N.W.2d 621, 626 (Minn.Ct.App. 1985). We therefore remand to the trial court for entry of adequate findings and a determination of whether appellant meets the standards set forth in Minn.Stat. § 518.552.

3. Appellant claims that the court erred in failing to find that payments during marriage, which reduced the mortgage principal on the commercial property by approximately $58,400, constituted marital property subject to equitable division under Minn.Stat. § 518.54, subd. 5. That provision reads in relevant part as follows:

[A]ll property acquired by either spouse subsequent to the marriage and before a decree of legal separation is presumed to be marital property regardless of whether title is held individually or by the spouse in a form of co-ownership * * *. * * * The presumption of marital property is overcome by a showing that the property is non-marital property.

"Non-marital property" means property, real or personal, acquired by either spouse before, during, or after the existence of their marriage, which * * *

(b) is acquired before the marriage;

(c) is acquired in exchange for or is the increase in value of property which is described in clauses (a), (b), (d), and (e).

Minn.Stat. § 518.54, subd. 5.

■ The spouse seeking to prove that property acquired during the marriage is nonmarital must do so by a preponderance of the evidence. *See Pearson v. Pearson*, 363 N.W.2d 337, 339 (Minn.Ct.App.1985). This court will not reverse the trial court's decision unless the findings were clearly erroneous. *Riley v. Riley*, 369 N.W.2d 40, 43 (Minn.Ct.App.1985), *pet. for rev. denied*, (Minn. August 29, 1985).

■ We disagree with appellant's characterization of the entire $58,400 as marital property. There is no "asset" of $58,400 to be divided because the increase in net equity in the commercial property amounted to only $22,629 during the marriage. At the time of trial, the court found that the fair market value had decreased from $173,000 at the time of marriage to $162,000, that the mortgage had been reduced from $108,116 to $49,711, and that the property was subject to additional, business-generated encumbrances of $24,758, which were acquired to complete the improvements to the property. Thus, the net equity at the time of trial was $87,531, an increase of $22,629 since the time of marriage. It is the $22,629 of additional equity in the property, not the $58,400 reduction in the mortgage, that is subject to classification under Minn.Stat. § 518.54, subd. 5.

■ Although respondent acquired title to the commercial property before the marriage, the trial court should have apportioned the increase in equity between marital and nonmarital estates. *See Schmitz v. Schmitz*, 309 N.W.2d 748 (Minn.1981); *Pearson v. Pearson*, 363 N.W.2d 337 (Minn.Ct.App.1985). The increase in equity was not merely "the increase in value of property" acquired before the marriage. *See* Minn.Stat. § 518.54, subd. 5. Rather, the additional equity resulted from income earned during the marriage that was used to reduce the mortgage and to make improvements to the property. Even if the income came from the earnings of The Scissors Circus, it would have freed up part of the joint pool of income to go toward the procurement of other marital assets. *See Ouinlivan v. Ouinlivan*, 359 N.W.2d 276 (Minn.Ct.App.1984). Furthermore, there was uncontroverted testimony that appellant contributed to the marital relationship as a homemaker, a bookkeeper, and a re-

ceptionist. Thus, we find that the increase in equity cannot be traced directly to respondent's nonmarital property, and that the trial court erred in classifying it as nonmarital property.

■ The Minnesota Supreme Court has set forth the formula to use in apportioning the increase in equity between marital and nonmarital assets. *See Brown v. Brown,* 316 N.W.2d 552, 553 (Minn.1982); *see also Schmitz v. Schmitz,* 309 N.W.2d 748, 750 (Minn.1981). Applying this formula to the facts, the numbers are as follows: $64,884 (respondent's equity in the property at the time of marriage) divided by $173,000 (the value of the property at the time of marriage) is equal to 37.5 percent. Respondent's nonmarital interest is thus $8,485.75, which is 37.5 percent of $22,629 (the increase in value of the property since the time of marriage). The remaining $14,143 constitutes marital property. The trial court's failure to classify this $14,143 was clearly erroneous, and we remand with instructions that the trial court distribute this amount pursuant to Minn.Stat. § 518.-58.

4. Appellant argues that although the trial court properly found that this was a case of unfair hardship, the amount of nonmarital property awarded was inadequate and therefore an abuse of discretion. Under Minn.Stat. § 518.58 (1984), the trial court has authority to award up to one-half of the nonmarital property to prevent unfair hardship. In this case, the trial court awarded $20,000, payable in installments of $5,000 over 4 years. The court reached this determination upon a consideration of the following factors: appellant performed duties of housekeeper and mother during the five years of marriage; appellant is left with a minimal estate after the court divided the property; appellant has incurred liabilities of approximately $20,400.

■ This court has stated that "[i]t is an unusual case where nonmarital property is distributed." *Dammann v. Dammann,* 351 N.W.2d 651 (Minn.Ct.App.1984). In addition, an unfair hardship award by a trial court cannot be overturned absent an abuse of discretion. *Frederiksen v. Frederiksen,* 368 N.W.2d 769, 775 (Minn.Ct. App.1985).

■ We find no abuse of discretion by the trial court here. The court considered the relevant factors and properly based its $20,000 award on those factors. Nevertheless, we remand with instructions that the trial court reconsider the propriety of the award in view of the increase in the marital estate.

■ 5. Appellant argues that the $5,000 in attorney's fees awarded to her by the trial court leaves her with substantial litigation expenses unpaid. Minn.Stat. § 518.14 (1984) provides that the court "may require one party to pay a reasonable amount necessary to enable the other spouse to carry on or to contest the proceeding, and to pay attorney's fees * * *." The trial court has broad discretion in awarding attorneys fees. *Frederiksen v. Frederiksen,* 368 N.W.2d 769, 778 (Minn. Ct.App.1985). The standard for determining the appropriateness of an award is a party's need for financial assistance in order to protect his or her rights in dissolution proceedings. *Id.* An award should not be disturbed on appeal absent a clear abuse of discretion. *Solon v. Solon,* 255 N.W.2d 395, 397 (Minn.1977); *Kirby v. Kirby,* 348 N.W.2d 392, 394 (Minn.Ct.App. 1984).

The trial court found that appellant's litigation expenses included $10,404 in attorney's fees, $1,500 in costs, $6,889.56 in accounting fees, and $1,691 owed to a previous attorney representing appellant in this matter. The reasonableness of these costs has been disputed. Respondent was responsible for his own litigation costs of $6,938. The court determined that it would be fair and reasonable for respondent to pay $5,000 for appellant's attorney's fees and costs.

■ We find that the trial court abused its discretion in awarding only $5,000 for

attorney's fees, 25 percent of the reported costs. This court has previously increased the award of attorney's fees upon a determination that the trial court clearly abused its discretion. *See Kohner v. Kohner*, 358 N.W.2d 721 (Minn.Ct.App.1984). In this case, respondent has substantial nonmarital assets and appellant barely receives enough to pay the outstanding fees and bills. The trial court found that appellant has a gross monthly income of $750 and that she has incurred liabilities of approximately $20,400. In light of these circumstances, we conclude that there was a clear abuse of discretion in the failure to award attorney's fees that more completely cover appellant's expenses. We increase by the trial court's award $5,000 so that appellant's total recovery is approximately 50 percent of her costs.

## DECISION

The trial court properly found that property acquired during premarital cohabitation was not marital property.

The trial court did not make sufficient findings to enable proper review of its failure to award spousal maintenance, and we therefore remand to the trial court for entry of adequate findings and a determination of whether appellant meets the standards of Minn.Stat. § 518.552.

The trial court erred in failing to classify the increase in equity in the commercial property as marital property, and we remand for a distribution of the property pursuant to Minn.Stat. § 518.58.

There was no abuse of discretion in awarding $20,000 to avoid unfair hardship. However, we remand with instructions that the trial court reconsider the propriety of the award in view of the increase in the marital estate.

The trial court abused its discretion in awarding only $5,000 in attorney's fees, and we increase the award to $10,000.

Affirmed in part, reversed in part and remanded.