In re the Marriage of Patricia N. EKLUND, Petitioner, Appellant,

v.

James J. EKLUND, Samuel Calvert, Trustee in Bankruptcy, Respondents.

No. C2–85–844.

Court of Appeals of Minnesota.

Dec. 17, 1985.

Dewey M. Nelson, Morris, for appellant.

Robert V. Dalager, Morris, for James J. Eklund.

James H. Martin, Stevens Co. Atty., Morris, for Samuel Calvert.

Heard, considered and decided by RANDALL, P.J., and PARKER and SEDGWICK, JJ.

## OPINION

SEDGWICK, Judge.

This appeal is from a dissolution judgment which: (1) ruled that the parties' real estate be sold and the proceeds used to pay debts not discharged by the bankruptcy court; and (2) denied appellant's motion for maintenance and attorney fees.

## FACTS

Patricia Eklund (appellant) and James Eklund (respondent) were married November 25, 1950. They lived in Morris, Minnesota, where respondent operated Eklund's Body Shop and appellant worked at Morris State Bank.

Six months after appellant sued for dissolution, respondent was hospitalized to be treated for cancer.

While in the hospital, respondent signed a stipulation prepared by appellant's attorney which transferred all respondent's interest in the parties' real estate to appellant. At the same time, respondent signed a quit claim deed transferring the property to appellant.

The property included a house in Morris, the body shop business property, and rental property adjacent to the body shop. The stipulation provided that respondent would assume all of the parties' debts from the body shop. The existing debts were not itemized in the stipulation.

On June 25, 1982, respondent's attorney withdrew as counsel upon learning that

respondent had signed the stipulation. Immediately after his withdrawal, a default hearing was held.

At the time of the default hearing, respondent was indebted to the Citizens Bank of Morris on an unsecured promissory note in the principal sum of $46,500, and to the State Bank of Cyrus in the sum of $62,000.

The judge who presided at the default hearing later said he was not advised by either the parties or counsel of the nature and extent of the indebtedness, or of the quit claim deeds. Appellant's attorney claims he told the judge of the existence of unsecured debts. Appellant also claims that she did not jointly apply for those debts with respondent.

In June and July of 1982, Citizens Bank and the State Bank of Cyrus sued the Eklunds to set aside the real estate transfer as fraudulent. In mid-July 1982, respondent filed a petition in voluntary bankruptcy listing total unsecured debts of $129,000 and no nonexempt assets, except $923.84 in contingent and unliquidated claims. The bankruptcy court stayed the district court suits after respondent filed his bankruptcy petition.

In October 1982, the trustee in bankruptcy sued in bankruptcy court to set aside the property transfers.

Also in October, the trustee moved the court in the dissolution proceeding to set aside that portion of the decree which provided for the property division, under Minn. R.Civ.P. 60.02. On February 7, 1983, the county court granted the trustee's motion and set aside the division of property.

Appellant sought district court review of the February 7, 1983 order. A three judge district court panel affirmed the court's order on November 29, 1983, stating that the trustee properly sued under Rule 60.02 to set aside that part of the dissolution decree transferring property to appellant. Finally, the Minnesota Supreme Court denied appellant's petition to appeal the district court's ruling.

In September 1983, the bankruptcy court awarded the State Bank of Cyrus $34,-316.02 and the Citizens Bank of Morris $43,872.78, both awards with interest from July, 28, 1983. These awards were not dischargeable in bankruptcy. In April 1984, the bankruptcy court set aside the quit claim deeds as fraudulent under 11 U.S.C. 548(a)(2).

The county court issued a judgment dated February 7, 1985, denying appellant's request for maintenance and attorney fees. The trial court also ruled that the parties' property should be sold and the proceeds used to pay debts not discharged in bankruptcy.

## ISSUES

1. Did the trial court err in ruling that the parties' property should be sold and the net proceeds used to pay debts not discharged by the bankruptcy court?

2. Did the trial court err in denying appellant's motion for maintenance?

3. Did the trial court err in denying appellant's motion for attorney fees and costs?

## ANALYSIS

1. Minn.Stat. § 518.58 (1984) provides in part:

[T]he court shall make a just and equitable division of the marital property of the parties without regard to marital misconduct, after making findings regarding the division of the property. The court shall base its findings on all relevant factors including the length of the marriage, any prior marriage of a party, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, needs, opportunity for future acquisition of capital assets, and income of each party. The court shall also consider the contribution of each in the acquisition, preservation, depreciation, or appreciation in the amount or value of the marital property, as well as the contribution of a spouse as a homemaker.

This court further explained division of property:

Minn. Stat. § 581.58 (1982) requires that the trial court make a just and equitable disposition of the property. Debts are apportionable. Each division of property is considered in the light of the particular facts of that case. The statute requires the court to balance such facts as the length of the marriage, the parties' incomes, age, skills, occupations, and needs. The court is guided by equitable considerations in distributing rights and liabilities, and has broad discretion in the distribution.

*Kreidler v. Kreidler,* 348 N.W.2d 780, 784 (Minn.Ct.App.1984) (citations omitted).

The trial court is vested with broad discretion in determining appropriate property division, division of debts incurred during marriage, and obligations of spousal maintenance. *Ruud v. Ruud,* 372 N.W.2d 851, 855 (Minn.Ct.App.1985) (citation omitted), *pet. for rev. granted* (Minn. Oct. 29, 1985).

The trial court here found:

That the Petitioner and Respondent owned the real estate as joint tenants prior to the commencement of dissolution proceedings and bankruptcy proceedings and filed joint income tax returns relating to said property for an extended period of time.

\* \* \* \* \* \*

That the parties, having received the joint mutual benefits of the properties and income, are, therefore, jointly responsible for the non-dischargeable debts relating to said properties.

Appellant argues that she did not participate in the fraud against the two banks, and it is inequitable to require her to pay.

This argument is not persuasive. The federal bankruptcy court and the Minnesota courts all found that the stipulation which attempted to transfer all assets but none of the debts to appellant was fraudulent.

Moreover, there was sufficient evidence to support the trial court's findings. Both parties enjoyed the benefits of the property, which had been held in joint tenancy during the marriage. Appellant

signed joint tax returns disclosing rental income and interest paid on the loans. The trial court has broad discretion to divide the parties' assets *and* debts upon dissolution. There was no abuse of discretion in ruling that both parties repay the banks.

2. Appellant also argues that the trial court erred by not granting her request for $236 per month in maintenance. A court may grant maintenance where the spouse seeking maintenance:

(a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, especially during a period of training or education, and

(b) Is unable to adequately support himself after considering all relevant circumstances through appropriate employment or is the custodian of a child \* \* \*.

Minn.Stat. § 518.552, subd. 1 (1984).

The standard of review of the trial court's decision on maintenance is whether the trial court abused its wide discretion, examined in the light of the controlling statutory guidelines. *Erlandson v. Erlandson,* 318 N.W.2d 36, 38 (Minn.1982).

In its January 1985 order, the trial court denied appellant's request for maintenance, stating she had failed to demonstrate need.

In the memo accompanying its order denying maintenance, the court implied its disgust for the parties' fraudulent attempt to transfer all assets to appellant:

The Court will not indulge itself in the luxury of commenting upon the protracted legal proceedings involved in this dissolution, or as to the collateral proceedings in Federal Court. It would only note that in the original proceedings, had complete candor existed thereby furnishing the Court the full information relating to the nature of the debts and obligations of the parties, the vast majority of legal proceedings involved in this matter would not have been necessary. It is, therefore, the conclusion of the Court that what the parties have received is basically what is now available to them.

The record established that appellant's gross income is $850 per month; respondent's is about $1,600. Both parties list expenses of over $1,000 per month. However, the court made no findings on appellant's ability to support herself on her salary or on respondent's ability to pay any maintenance.

■ Minn.Stat. § 518.552 requires a balancing of the supporting spouse's financial needs and capacity against the other spouse's financial needs and capacity. *Otte v. Otte*, 368 N.W.2d 293, 297 (Minn.Ct. App.1985) (citing *Krick v. Krick*, 349 N.W.2d 350, 352 (Minn.Ct.App.1984)).

This court has reversed a trial court when it denied temporary maintenance, but made no findings on factors relevant to the need for such maintenance. *Riley v. Riley*, 369 N.W.2d 40, 45 (Minn.Ct.App.1985), *pet. for rev. pending*. There, the record provided the income of both parties, but the trial court made no findings on factors relevant to the need for temporary maintenance, such as the wife's earning capacity and her ability to become self-supporting.

This court has also remanded where maintenance was awarded without findings regarding husband's present ability to pay support or maintenance. *Kramer v. Kramer*, 372 N.W.2d 364 (Minn.Ct.App. 1985), *pet. for rev. denied* (Minn. Oct. 11, 1985).

■ In *Krick*, this court overturned the trial court's denial of a maintenance award because the record was incomplete. The record did not provide adequate information on the relative value of the parties' personal possessions or on the value of the pension plan, nor was there any estimate of respondent's necessary living expenses. *Krick*, 369 N.W.2d at 352; *but see Otte v. Otte*, 368 N.W.2d at 297 (The statute does not explicitly require a finding of income, but requires only that the trial court consider income.).

■ Here, the trial court understandably was disgusted by both parties' inequitable and fraudulent conduct. However, the trial court must still balance both parties' needs and capacities before making the maintenance decision. Therefore, we reverse and remand on the maintenance issue, for findings indicating the proper balancing calculus.

■ 3. The trial court refused appellant's request for attorney fees. A trial court may make an award of attorney fees in dissolution cases under Minn.Stat. § 518.14 (1984). This is almost entirely within the discretion of the trial court. *Kramer v. Kramer*, 372 N.W.2d 364, 367 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Oct. 11, 1985).

The court found:

That each of the parties has sufficient assets with which to pay their own attorneys' fees in said matter.

This was within the court's discretion. There was no error.

### DECISION

We affirm the trial court on the property/debt distribution and on the attorney fees issue. We reverse and remand for findings on and determination of the maintenance issue.